IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

ANTHONY HENRY, )
)
        Plaintiff, )
)
vs. )
)
MUNICIPALITY OF ANCHORAGE, )
ANCHORAGE POLICE DEPARTMENT, )
and MARK MEW. )
)
        Defendants. )
_____ ) Case No. 3AN-15-06834 CI

## FIRST AMENDED COMPLAINT

Plaintiff, Anthony Henry, through counsel, the law firm of Dillon & Findley, P.C., alleges the following factual basis and causes of action:

1. Lieutenant Anthony Henry served the public as a police officer, employed by the Municipality of Anchorage ("MOA"), for over 23 years when he was wrongfully terminated in April 2015 from the Anchorage Police Department ("APD") and MOA.

2. During Lt. Anthony Henry's long and distinguished career with the APD, he worked his way up the command structure through assignments to various APD departments and divisions, including patrol, crime suppression, and as a detective. He was a Canine Officer, a member of APD's Homicide Unit and SWAT Team,

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 1 of 16

MOA Exhibit A
Page 1 of 17

as well as serving in the Special Victim's and Crimes Against Children Units.

## Jurisdiction and Venue

3. This Court has jurisdiction over this case pursuant to AS 22.10.020.

4. Venue in this action is proper in the Third Judicial District at Anchorage under Alaska Rule of Civil Procedure 3.

## Parties

5. Anthony Henry is a resident of Anchorage, Alaska.

6. Defendant MOA is a home rule Municipality organized under the laws of the State of Alaska, and is subject to suit under AS 29.35.010 and the common law.

7. Defendant APD is an agency of the MOA.

8. Mark Mew is the current Chief of the APD, and served as APD Chief during all times relevant to this lawsuit.

## Facts Relevant to the Causes of Action

9. From September 2009 through April 2012, Lt. Henry supervised an APD officer ("the officer") while working as the commander of APD's specialized units. During that time, the officer confided to Lt. Henry that he was diagnosed with a degenerative disease.

10. The officer's condition was controlled by medication and did not affect his job performance. With that knowledge,

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 2 of 16

MOA Exhibit A
Page 2 of 17

Lt. Henry maintained (and still does today) that the officer's medical condition was irrelevant.

11. In January 2012, then-Deputy Chief Steve Hebbe directed Captain Ross Plummer to initiate an Internal Affairs ("IA") investigation into the officer because of his diagnosis, condition and medication.

12. On April 10, 2012, then-Deputy Chief Hebbe ordered that the officer be transferred from his then position to a different position, justifying the transfer as a better use of staff. But that transfer was in direct conflict with the Police Executive Research Form staff study commissioned by MOA Mayor Dan Sullivan.

13. Later that day, Lt. Henry reported the retaliation against the officer to Chief Mark Mew, because he believed that the actions taken against the officer violated the Americans With Disabilities Act and APD policies.

14. On information and belief, sometime on or around June 2012, the officer told Lt. Henry that he intended to file a complaint with the Equal Employment Opportunity Commission ("EEOC") and the MOA's Office of Equal Opportunity ("OEO").

15. Separate and apart from the treatment of the officer, starting in April 2012, among other things and as a result of Lt. Henry's decision to report the treatment to Chief Mew, the

FIRST AMENDED COMPLAINT
Anthony Henry v. Municipality of Anchorage, et al.
Case No. 3AN-15-06834 CI
Page 3 of 16

MOA Exhibit A
Page 3 of 17

APD engaged in retaliatory acts against Lt. Henry, including, but not limited to:

    a. Unsupported IA investigations;

    b. Placement on restrictive duty (home car taken away, police duty suspended);

    c. APD-ordered unofficial fitness for duty psychological evaluation; and

    d. Oral reprimands.

16. On various occasions between June and December 2012, Lt. Henry met with Chief Mew and requested that he stop the wrongful and retaliatory conduct of the APD and its officers. Chief Mew took no such action.

17. On December 17, 2012, Lt. Henry filed an OEO complaint regarding the wrongful and retaliatory acts taken against him. Lt. Henry filed a complaint with the EEOC about six weeks later, on January 28, 2013.

18. The MOA's OEO issued an investigative report on January 28, 2013 in response to Lt. Henry's OEO complaint. Until just recently, Chief Mew, the MOA and APD denied Lt. Henry access to this report. Pursuant to a Protective Order, signed by this Court on June 15, 2015, Lt. Henry received a copy of the OEO report.

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 4 of 16

MOA Exhibit A
Page 4 of 17

19. In March 2013, unbeknownst to Lt. Henry, APD initiated another IA investigation, at the direction of then-Deputy Chief Hebbe and Sergeant Jack Carson, regarding Lt. Henry's handling of the officer's medical diagnosis. APD did not inform Lt. Henry of the IA investigation until June 2013.

20. On or around that same time, the EEOC requested information from APD and MOA regarding Lt. Henry's EEOC claims. The parties also agreed to mediate his January 2013 EEOC claim. Upon information and belief, the APD, Chief Mew, and MOA did not inform the EEOC of the subsequent IA investigation during the pendency of his EEOC proceeding.

21. From May 31, 2013 through June 3, 2013, Lt. Henry, APD and the MOA mediated the January 2013 EEOC complaint, settling that complaint on June 4, 2013. Chief Mew also attended the mediation, and signed the Settlement Agreement on behalf of the MOA. The Settlement Agreement dictated the terms of the settlement.

22. After Lt. Henry signed the Settlement Agreement, he learned from Marilyn Stewart-Richardson, the author of the OEO investigative report, that Chief Mew requested she change the OEO report findings. She apparently refused. Lieutenant Henry also learned about the March 2013 IA investigation regarding his handling of the officer's medical diagnosis, and that Chief Mew

FIRST AMENDED COMPLAINT
Anthony Henry v. Municipality of Anchorage, et al.
Case No. 3AN-15-06834 CI
Page 5 of 16

MOA Exhibit A
Page 5 of 17

instructed IA not to inform Lt. Henry about the IA investigation until after his EEOC claim settled.

23. The Settlement Agreement included a provision that protects Lt. Henry from any retaliation related to deposition or trial testimony he gave in connection with a lawsuit filed by former APD officers.

24. On August 2, 2013, Lt. Henry filed a second EEOC claim alleging violation of the Settlement Agreement and APD policies. The allegations stemmed from Chief Mew's decision to keep the March 2013 IA investigation a secret, and Chief Mew's, APD's and MOA's continued retaliatory conduct.

25. In September 2013, Lt. Henry learned that the March 2013 IA investigation resulted in a finding that he did not violate APD policies regarding issues related to the officer's medical status.

26. In October 2013, then-Deputy Chief Hebbe and Sergeant Carson made allegations to Chief Mew related to the Alaska National Guard, including allegations that Lt. Henry interfered in drug and sexual assault investigations. Lieutenant Henry did not become aware of these allegations until 18 months later when he read the report that led to his termination.

27. In November 2013, Chief Mew requested that the Federal Bureau of Investigations ("FBI") investigate the allegations

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 6 of 16

MOA Exhibit A
Page 6 of 17

referenced in paragraph 26, above. Lieutenant Henry did not become aware of this request until he read the report that led to his termination.

28. In February 2014, Lt. Henry, the MOA and APD mediated Lt. Henry's second EEOC complaint, filed in August 2013. The EEOC claim did not settle.

29. On May 13, 2014, Lt. Henry received notice from Chief Mew that he was being reassigned to the Special Victim's Unit and Crimes Against Children Unit. Chief Mew also requested that Lt. Henry settle the August 2013 EEOC complaint, which Lt. Henry declined.

30. In June 2014, Lt. Henry received notice that the IA investigation instigated by Sergeant Carson had been completed, with a finding of no violations. Lieutenant Henry had no previous notice of that IA investigation, and requested access to his IA records. MOA and APD refused to allow Lt. Henry to review his IA records, in violation of state and municipal law. Lieutenant Henry filed a grievance on the issue, and subsequently prevailed. In connection with Lt. Henry's review of his IA records, Lt. Henry determined that Internal Affairs Commander Lt. Kevin Vandegriff had manipulated and, at times, changed certain IA records, in violation of APD policy,

FIRST AMENDED COMPLAINT
Anthony Henry v. Municipality of Anchorage, et al.
Case No. 3AN-15-06834 CI
Page 7 of 16

MOA Exhibit A
Page 7 of 17

including a change to an IA record related to an EEOC charge, subject to mediation.

31. On October 20, 2014 and December 18, 2014, Lt. Henry was interviewed by an investigator hired by the MOA and APD to investigate allegations regarding the Alaska National Guard. The MOA and APD provided Lt. Henry with less than 24 hours of notice, and denied him the right to legal representation. The MOA and APD did not provide Lt. Henry with any of the investigation background information, prohibited him from reviewing notes or reports prior to or during the interviews, and precluded him from discussing the investigation with anyone.

32. On March 25, 2015, the MOA and APD ordered Lt. Henry to report to City Hall and terminated him, effective April 1, 2015. The MOA and APD did not follow the procedures outlined in their personnel regulations and failed to satisfy Alaska law.

33. On June 11 and 12, 2015, the U.S. Department of Justice sent two letters to Lt. Henry affording him the right to institute a civil action under Title 1 of the Americans With Disabilities Act of 1990, 42 U.S.C. 12111 and 42 U.S.C. 12203, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e. These letters are considered "Notice of Right to Sue" letters and relate to EEOC Charge No. 551201301467.

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 8 of 16

MOA Exhibit A
Page 8 of 17

## Count I – Retaliatory Discharge
### (MOA, APD and Chief Mew)

Plaintiff incorporates paragraphs 1 through 33 as if fully set forth and further alleges as follows:

34. By making good faith reports of violations of federal laws, municipal laws, state laws, and APD policies to Chief Mew, other individuals within the APD, the MOA, and the EEOC, Lt. Henry engaged in protected activity under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.

35. The MOA, APD and Chief Mew were aware of Lt. Henry's complaints and had been for a significant period of time. In fact, the MOA, APD and Chief Mew promised not to retaliate against him in connection with the settlement of his first EEOC claim.

36. The MOA, APD, and Chief Mew retaliated against Lt. Henry for engaging in protected activity. The retaliatory conduct took many forms, eventually resulting in wrongful termination.

37. The retaliatory conduct by the MOA, APD, and Chief Mew violated Alaska and federal law, and caused Lt. Henry to suffer damages in excess of $100,000.00, the precise amount to be determined at trial.

FIRST AMENDED COMPLAINT
Anthony Henry v. Municipality of Anchorage, et al.
Case No. 3AN-15-06834 CI
Page 9 of 16

MOA Exhibit A
Page 9 of 17

## Count II – Wrongful Termination
### (MOA and APD)

Plaintiff incorporates paragraphs 1 through 37 as if fully set forth herein and further alleges as follows:

38. The acts by the MOA and APD, including retaliating and terminating Lt. Henry for reporting and opposing unlawful conduct, constitute the tort of wrongful termination in violation of the public policy of the State of Alaska.

39. As a result of the MOA's and APD's wrongful termination, Lt. Henry suffered damages in excess of $100,000.00, the precise amount to be determined at trial.

## Count III – Breach of Covenant of Good Faith and Fair Dealing
### (MOA and APD)

Plaintiff incorporates paragraphs 1 through 39 as if fully set forth herein and further alleges as follows:

40. Lieutenant Henry was employed by the MOA, as a police officer for APD.

41. Lieutenant Henry's employment by the MOA and APD included an implied covenant of good faith and fair dealing.

42. Under Alaska law, every contract contains an implied covenant of good faith and fair dealing.

43. The MOA and APD breached the covenant of good faith and fair dealing in various ways, including:

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 10 of 16

MOA Exhibit A
Page 10 of 17

a. by wrongfully breaching the Settlement Agreement; and

b. by wrongfully terminating Lt. Henry's employment with APD and MOA and retaliating against Lt. Henry in violation of Alaska law, APD policies and the Settlement Agreement.

44. As a result of MOA's and APD's breach of the covenant of good faith and fair dealing, Lt. Henry suffered damages in excess of $100,000.00, the precise amount to be determined at trial.

### Count IV - Breach of Contract
### (MOA and APD)

Plaintiff incorporates paragraphs 1 through 44 as if fully set forth herein and further alleges as follows:

45. Lieutenant Henry, and the APD, on behalf of the MOA, entered into a Settlement Agreement on June 4, 2013. According to the Settlement Agreement, the MOA made the following promises:

a. That there shall be "no discrimination or retaliation of any kind" against Lt. Henry for testifying in a trial proceeding or deposition or for filing the first EEOC claim regarding the officer;

FIRST AMENDED COMPLAINT
Anthony Henry v. Municipality of Anchorage, et al.
Case No. 3AN-15-06834 CI
Page 11 of 16

MOA Exhibit A
Page 11 of 17

b. That certain IA investigations and records of oral reprimands would be removed and purged from Lt. Henry's personnel file;

c. That APD would provide department-wide OEO training;

d. That the OEO report would be provided to Lt. Henry after review by the MOA's attorney and/or a court order; and

e. That the APD would include Lt. Henry in discussions regarding his "[F]all assignments."

46. MOA and APD breached the Settlement Agreement by failing to perform as agreed.

47. By virtue of MOA's and APD's breach of the Settlement Agreement, Lt. Henry suffered damages in excess of $100,000.00, the precise amount to be proven at trial.

### Count V - Fraud in the Inducement
### (MOA, APD and Chief Mew)

Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein and further alleges as follows:

48. The MOA, APD and Chief Mew concealed material information from Lt. Henry during the mediation of his EEOC complaint. Per Chief Mew's direction, the existence of an IA investigation against Lt. Henry regarding his handling of the

FIRST AMENDED COMPLAINT
Anthony Henry v. Municipality of Anchorage, et al.
Case No. 3AN-15-06834 CI
Page 12 of 16

MOA Exhibit A
Page 12 of 17

officer's medical diagnosis was concealed from Lt. Henry in order to induce him to settle the EEOC complaint.

49. The failure of the MOA, APD and Chief Mew to inform Lt. Henry about this charge was intentional, and constitutes a misrepresentation of a material fact.

50. Lieutenant Henry reasonably relied on information from the MOA, APD, and Chief Mew regarding pending IA complaints. In fact, the Settlement Agreement, signed by Chief Mew on behalf of the MOA and APD, included a list of IA claims that were to be expunged from Lt. Henry's personnel files.

51. As a result of the MOA's and APD's misrepresentation, Lt. Henry suffered damages in excess of $100,000.00, the precise amount to be determined at trial.

### Count VI – Violation of Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12111 and Title V, § 503 of 42 U.S.C. § 12203
(MOA, APD and Chief Mew)

Plaintiff incorporates paragraphs 1 through 51 as if fully set forth herein and further alleges as follows:

52. The actions of MOA, APD and Chief Mew related to retaliation described in Lt. Henry's second EEOC complaint constitute a violation of Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12111 and Title V, § 503 of 42 U.S.C. § 12203.

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 13 of 16

53. As a result of the conduct of MOA, APD and Chief Mew, Lt. Henry has suffered injury including, but not limited to, economic loss, loss of enjoyment of life and deprivation of his equal employment opportunities.

## Count VII – Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
### (MOA, APD and Chief Mew)

Plaintiff incorporates paragraphs 1 through 53 as if fully set forth herein and further alleges as follows:

54. The actions of MOA, APD and Chief Mew related to retaliation described in Lt. Henry's second EEOC complaint constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

55. As a result of the conduct of MOA, APD and Chief Mew, Lt. Henry has suffered injury including, but not limited to, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages.

## Count VIII – Vicarious Liability
### (MOA and APD)

Plaintiff incorporates paragraphs 1 through 55 as if fully set forth herein and further alleges as follows:

56. By making good faith reports of violations of federal laws, municipal laws, state laws, and APD policies to Chief Mew,

FIRST AMENDED COMPLAINT
Anthony Henry v. Municipality of Anchorage, et al.
Case No. 3AN-15-06834 CI
Page 14 of 16

MOA Exhibit A
Page 14 of 17

other individuals within the APD, the MOA, and the EEOC, Lt. Henry engaged in protected activity under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*

57. MOA and APD are vicariously liable for the acts and omissions of their employees (and/or contractors or agents) and staff.

58. To the extent that any MOA and APD employees (and/or contractors or agents) exhibited retaliatory conduct that violated Alaska and federal law, the MOA and APD are vicariously liable.

## Prayer for Relief

WHEREFORE, Anthony Henry demands and prays that judgment be entered in his favor and against the MOA, APD and Chief Mew as follows:

1. That Lt. Henry be awarded all available damages, including actual, consequential, statutory, special and punitive damages (as allowed by law), and damages under Anchorage Municipal Code 1.45.010;

2. That Lt. Henry be awarded injunctive relief, including reinstatement or some other make-whole remedy that returns Lt. Henry to the position he would have occupied absent MOA's, APD's, and Chief Mew's conduct;

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 15 of 16

MOA Exhibit A
Page 15 of 17

3. That pre and post-judgment interest be awarded, along with reasonable attorney's fees, costs and expenses incurred by Anthony Henry in bringing this case; and

4. That this Court award such other relief as it deems proper.

DATED this 4th day of September 2015, at Anchorage, Alaska.

DILLON & FINDLEY, P.C.
Attorneys for Plaintiff

By: *Molly C. Brown*
Ray R. Brown, ABA No. 8206012
Molly C. Brown, ABA No. 0506057
Jessica Dillon, ABA No. 0811066

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 4th day of September 2015, a true and correct copy of the foregoing document was served by:

[ ] facsimile
[ ] hand delivery
[✓] first class mail

on the following attorneys of record:

Blair M. Christensen
Assistant Municipal Attorney
Municipality of Anchorage
P. O. Box 196650
Anchorage, AK 99519

*Lisa Kusmider*
Lisa Kusmider

FIRST AMENDED COMPLAINT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3AN-15-06834 CI
Page 16 of 16

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

ANTHONY HENRY,

        Plaintiff,

vs.

MUNICIPALITY OF ANCHORAGE and ANCHORAGE POLICE DEPARTMENT,

        Defendants.

Case No. 3AN-15-6834 CI

### DEMAND FOR JURY TRIAL

Plaintiff, through counsel, the law firm of Dillon & Findley, P.C., hereby requests and demands a trial by jury on all issues triable of right by jury in the above-referenced matter.

DATED this 6th day of May 2015, at Anchorage, Alaska.

DILLON & FINDLEY, P.C.
Attorneys for Plaintiff

By: *Molly C. Brown*
Ray R. Brown, ABA No. 8206012
Molly C. Brown, ABA No. 0506057
Jessica Dillon, ABA No. 0811066