# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANTHONY HENRY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MUNICIPALITY OF ANCHORAGE, et. al,<br><br>　　　　Defendants. | Case No. 3:15-cv-187 RRB<br><br>**Order Re: Motions to Compel (Docket Nos. 29, 87 & 108) and Motion for Protective Order (Docket 70)** |

　　　　Pending before the Court are several motions related to discovery. At the heart of all of these motions is a fundamental disagreement among counsel as to how discovery should proceed in this matter. Plaintiff, in a nutshell, thinks the Stipulated Protective Order ("SPO") the parties entered into in November 2015 (Docket 12) is adequate to protect all confidential documents sought in discovery, and therefore the Defendants should not be redacting any information from the discovery they provide. Defendants dispute this argument, noting that redactions are specifically permitted by the SPO, as well as various statutes and regulations, and that the "overwhelming majority of redactions made by the Municipality are of highly sensitive information which is marginally relevant, if not completely irrelevant, to Henry's retaliation claims." Docket 44 at 2. Defendants argue that Plaintiff cannot establish that he should have access to such legally safeguarded information such as identities of sexual assault victims or confidential informants, or personal and therefore private information about other Municipal employees.

The Court is cognizant of the burdensome nature of discovery in a matter such as this, where the paper trail is voluminous, and concerns about confidentiality are high. Accordingly, the Court offers the following guidance to the parties in an effort to ease the process of discovery in this matter.

**Controlling Authority and Agreements**

The parties are reminded of the guidance provided by this Court at Docket 93. Additionally, the general scope of discovery is defined by Fed. Rule Civ. Proc. 26(b)(1) as follows:

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
> . . .
> The key phrase in this definition—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. . . At the same time, "discovery, like all matters of procedure, has ultimate and necessary boundaries." . . . Discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26(b)(1).

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citations omitted).

The SPO provides:

> Privileged documents may be withheld or redacted in accordance with Federal Rule of Civil Procedure 26(b)(5). **Documents containing certain information which is subject to disclosure limitations by state or federal statute or regulation may be subject to redaction or other limitation in accordance with such statutes or regulations,** which include AS 12.61.140; AS 40.25.120; AS 45.48.090(7); 45 CFR 164.500 et seq. and 8 AAC 15.910(d)(2). By agreeing to this protective order, the parties do not agree that any privilege created by statute, rule or common law is appropriate for any document which might otherwise be disclosed and, rather, any

> question of whether a privilege has properly been applied to a particular document may be decided later by the parties and/or the Court.

Docket 12, ¶ 2 (emphasis added). Plaintiff now suggests that all of the referenced statutes and regulations are either inapplicable or contain exceptions for litigation. Docket 29 at 9. The Court disagrees. Pursuant to the SPO, redactions are to be expected. The Court is in no position at this juncture to determine whether the redactions already made were appropriate or not.

Plaintiff seeks an unredacted version of the investigation and other documents that form the basis of his termination. Docket 29 at 2. Defendants argue that unredacted documents sought would disclose highly sensitive information with little or no relevance to the claims in this case, including medical details of sexual assault victims. Docket 44. Plaintiff's wholesale demand for unfettered access to information that he concedes is privileged overreaches his rights to discovery. Instead, Plaintiff may identify *specific documents* (by Bates number or other unique identifier) which he thinks contain redactions that, if disclosed, would lead to discoverable evidence. Upon request to review such documents, Defendant shall submit them to the Court within five working days for *in camera* review. If the Court determines that any pages should be disclosed to Plaintiff, the Court will issue an order specifying which pages. **Plaintiff's Motion to Compel at Docket 29 is accordingly DENIED.**

Plaintiff also moves to compel discovery withheld based upon attorney-client privilege. Docket 108. Plaintiff's motion implicates the Municipal Attorney's Office ("MAO") was involved in the retaliation against him. Docket 108 at 1. Specifically, Plaintiff alleges that the MAO acted in concert with individuals within APD to hide information from Plaintiff, mislead the EEOC, and mislead the state court and arbitration proceedings. *Id.* at 2. In doing so, Plaintiff alleges, the

Municipal attorneys stepped outside their roles as attorneys providing advice. *Id.* at 3. Plaintiff further argues that the attorney-client privilege does not apply to communications between the MAO and the Municipality Office of Equal Opportunity ("OEO") because the MAO does not represent the OEO when it investigates informal complaints. Docket 108 at 27. Defendants, however, note that the MAO is obligated to give legal advice to all branches of the municipal government. Docket 78, citing MOA Charter § 5.04. **Plaintiff's Cross-Motion to Compel Discovery at Docket 108 is DENIED**. However, Defendants are directed to provide counsel with a detailed privilege log regarding all materials that have been withheld based on attorney-client privilege, if one has not already been provided. Upon receipt of this log, Plaintiffs may again identify *specific documents* (by Bates number or other unique identifier) which he thinks should not be protected by attorney-client privilege *and* that, if disclosed, would lead to discoverable evidence. Upon request to review such documents, Defendant shall submit them to the Court within five working days for *in camera* review. If the Court determines that any pages should be disclosed to Plaintiff, the Court will issue an order specifying which pages.

Plaintiff also has moved to compel production of audio recordings. Docket 87. Plaintiff is aware of several audio recordings based upon references in documents produced in discovery and general knowledge of police practice. He alleges that Defendants have never produced a list of withheld audios. Docket 87 at 3. Specifically, Plaintiff seeks "audio interviews with the confidential informants from 2010." Docket 87 at 4. Defendant responds that Plaintiff's "quixotic effort to examine each and every document and audio file associated with the drug enforcement activities that involved these informants simply is not merited." Docket 95 at 8. They argue that disclosure would

be burdensome and outweighs any arguable relevance under *Rowan B. Sr. v. State Dep't of Human & Social Services*, 320 P.3d 1152 (Alaska 2014). Plaintiff argues that the SPO would protect the confidential nature of the audio recordings. Docket 109 at 3. Plaintiff further argues that "the identities of the informants and suspects are well-known to all of the parties," and "Defendants' attorneys do not explain why [Plaintiff] can listen to unredacted audios in their office under the supervision of their legal secretary, but cannot obtain a copy of those unredacted audios for use in litigation." Docket 109 at 6. Plaintiff also argues that what is *not* on the audios is relevant to undermine the credibility of the underlying investigation that led to Plaintiff's termination, and that the tone and friendliness of the conversations are necessary to interpret meaning. Docket 109 at 8-9.

Defendants have provided (or will provide) Plaintiff with redacted transcripts of the audio files, and the audios have been made available to Plaintiff's counsel to listen to, albeit not in a setting convenient for Plaintiff's counsel. Docket 95 at 9. The Court notes that transcripts will be particularly useful in determining what is *not* on the audio recordings. The Court agrees with Defendants that Plaintiff's "motion for wholesale production of audio files lacks merit as it seeks audio recordings which are legitimately objected to as being overbroad and burdensome." Docket 95 at 13. Plaintiff has been provided with redacted transcripts and the opportunity to listen to the audio recordings. Although Defendants have not specifically articulated this concern, it is reasonable that the Municipality would like to limit as much as possible the reproduction and distribution of materials that would disclose the identities of confidential informants, victims, and other sensitive information. Accordingly, the **Motion to Compel Production of Audio Recordings at Docket 87 is DENIED.** Plaintiff may however continue to listen to the recordings in question

at defense counsel's office at a time mutually convenient to the parties and may, in the process, notate for the Court what specific recordings require production or Court review.

Finally, Defendants move for a protective order, arguing many of Henry's requests seek records which are largely irrelevant and not calculated to lead to the discovery of admissible evidence. Docket 70. Defendants allege the discovery demands go far beyond the retaliation issues. For example, the discovery requests delve deeply into the facts and subjects of the investigations with which MOA believes Plaintiff interfered, thus leading to his termination. Defendants argue that the facts and subjects of these investigations are not necessary to a determination of whether he interfered with them.

The nature of the discovery requests include 141 requests for production with 99 additional subparts, which MOA argues is burdensome on its face. In addition, MOA argues many of the requests are individually burdensome, seeking "a broad swath of documents with little to no subject matter or time frame. The MOA has produced over 12,000 pages of documents, with production continuing as documents are collected, reviewed, and redacted. Defendants argue that "a protective order is necessary to temper Henry's unrelenting demands that the Municipality search for every last scrap of paper potentially responsive to these innumerable and overreaching requests." Docket 125 at 3. It remains unclear to the Court specifically what kind of "protective order" Defendants are requesting. Obviously discovery is not going to come to a complete halt. Defendants are clearly overburdened by Plaintiff's discovery requests. The Court is hopeful that the guidance given in this order regarding redaction and in camera review will help the parties manage the discovery process.

In light of the foregoing, the Motions at Docket nos. 29, 70, 87, and 108 are **DENIED.**

**IT IS SO ORDERED** this 13th day of May, 2016.

            S/RALPH R. BEISTLINE
            UNITED STATES DISTRICT JUDGE