# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

ANTHONY HENRY,

        Plaintiff,

    v.

MUNICIPALITY OF ANCHORAGE and
MARK MEW,

        Defendants.

Case No. 3:15-cv-0187-RRB

**<u>ORDER REGARDING
MOTIONS AT DOCKETS 81,
100, 142, 163, 179, AND 180</u>**

Pending before the Court are several motions. Defendant Mark Mew seeks summary judgment on the two remaining claims against him: **Count 1** for retaliatory discharge and **Count V** for fraudulent inducement. Docket 81. The Municipality seeks summary judgment dismissing **Counts I, II, V, and VI,** as well as any claims that seek liability for acts alleged to have occurred prior to June 4, 2013. Docket 100. All of these motions have been opposed. The Court has reviewed the extensive briefing and finds that oral argument is unnecessary.[1]

---

[1] Plaintiff's Motion to Amend Complaint (Docket 139) and Cross-Motion for Summary Judgment (Docket 146) will be addressed in subsequent orders.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of proof for showing that no fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets that burden, then it falls upon the non-moving party to refute with facts that would indicate a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the facts and allegations presented by a party are merely colorable, or are not significantly probative. *Id., see also In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1995).

## II.  FACTS

Plaintiff Anthony Henry had a twenty-three year career with the Municipality of Anchorage as a police officer. He was terminated in April 2015 and this wrongful termination lawsuit followed. The facts relevant to this motion practice are as follows.[2]

Sometime in 2011, APD Officer "J.W." confided in Plaintiff that he had a degenerative disease. In **January 2012,** an Internal Affairs ("IA") investigation into J.W. was

---

[2] Except as otherwise noted, this factual summary is based on the First Amended Complaint.  Docket 1-1.

opened because of his diagnosis, condition, and medication. In **April 2012,** J.W. was transferred to a different position. Plaintiff reported the transfer to Chief Mark Mew as retaliation, believing that the action taken violated the ADA and APD policies. Plaintiff alleges that it was at this time that APD engaged in retaliatory acts against him, including an unsupported IA investigation, restrictive duty, a psychological evaluation, and oral reprimands.

In **June 2012,** J.W. told Plaintiff that he intended to file an EEOC complaint, as well as a complaint with the Municipality's Office of Equal Opportunity (OEO). Between **June and December 2012,** Plaintiff asked Chief Mew to stop the wrongful and retaliatory conduct of the APD and its officers. In **December 2012,** Plaintiff filed his own OEO Complaint regarding wrongful and retaliatory acts taken against him. In **January 2013** Plaintiff filed an EEOC complaint.

In **March 2013,** APD initiated another IA investigation regarding Plaintiff's handling of J.W.'s medical diagnosis. However, Plaintiff was not informed of this new IA investigation. Meanwhile, the parties agreed to mediate the EEOC claim. Plaintiff alleges Defendants did not inform EEOC of the new investigation. In **June 2013,** the parties settled the EEOC claim and then Plaintiff was informed of the IA investigation started in March.

In **August 2013,** Plaintiff filed a second EEOC claim alleging violation of the Settlement Agreement and APD policies, based on Chief Mew's decision to keep the March 2013 investigation a secret, and citing "continued retaliatory conduct." One month later, in **September 2013**, the March investigation resulted in a finding that Plaintiff did not violate APD policies regarding issues related to J.W.'s medical status.

In **October 2013**, APD superiors made allegations to Chief Mew related to the AK National Guard, including allegations that Plaintiff interfered in drug and sexual assault investigations. Plaintiff would not learn of these allegations until 18 months later. Chief Mew requested that the FBI investigate these allegations in **November 2013.**

By **February 2014,** attempts to settle the second EEOC complaint failed. Chief Mew reassigned Plaintiff to the Special Victim's Unit and Crimes Against Children Unit in **May 2014.** In **June 2014,** Plaintiff requested access to his IA records. Plaintiff filed a grievance and prevailed. Between **October and December 2014**, Plaintiff was interviewed twice by an investigator hired by the Municipality to investigate allegations regarding the AK National Guard. **In March 2015**, the Municipality terminated Plaintiff effective April 1, 2015. According to the MOA, Henry's termination relates to events that occurred in late February 2010 involving two individuals, one of whom was an officer in the Alaska National Guard ("AKNG") who indicated that he would serve as a confidential informant, but he did not want his name disclosed to the AKNG command staff. The Municipality found that Plaintiff

immediately took the information to AKNG General Thomas Katkus, thereby violating the promise of confidentiality made to the informant.  Docket 76 at 14.

## III.    SUMMARY JUDGMENT MOTIONS

### A.    Count 1 - Retaliatory Discharge

Plaintiff's First Amended Complaint alleges that by making good faith reports of violations of federal, municipal, and state laws, as well as APD policies, he was engaged in protected activity. Plaintiff also alleges that the Municipality and Chief Mew "promised not to retaliate against him in connection with the settlement of his first EEOC claim." Docket 1-1 at 9. The Municipality and Mew move for summary judgment on Count I.[3]

Mew argues that the retaliatory discharge claim is "frivolous" as to him. Docket 81 at 2. Mew suggests that Plaintiff's claim under AS 18.80.220 does not permit liability against an individual who is not the employer.  Docket 81 at 4 (*citing* AS 18.80.220). Plaintiff argues that because Chief Mew "aided and abetted" the retaliation meted out by others, he is individually liable. Docket 144 at 8 (*citing Mills v. Hankla*, 297 P.3d 158, 168 (Alaska 2013)).  "The Court in *Hankla* found that an employee cannot be liable for aiding and abetting when it is that employee's own conduct that gives rise to the employer's liability.

---

[3] In his proposed Second Amended Complaint, Plaintiff further alleges that the Municipality and Chief Mew hid the existence of an internal investigation in order to induce Plaintiff to settle his EEOC complaint. Docket 139-3 at 8. The Proposed Second Amended Complaint is not at issue in the summary judgment motion practice.

[But] *Hankla* expressly allows for individual liability when an employee aids and abets the retaliatory conduct of others." *Id.* Plaintiff argues that while the Municipality is vicariously liable for all discriminatory acts of the APD and any employee, "Chief Mew is individually liable because he aided and abetted the overall retaliatory and discriminatory scheme to terminate [him]." Docket 144 at 8. *See also Ellison v. Plumbers and Steam Fitters Union Local 375*, 118 P.3d 1080, 1087 (Alaska 2005). Plaintiff argues that Mew's decision to hide the new complaint and delay an Internal Affairs ("IA") investigation were affirmative actions which rose to the level of "substantial assistance and encouragement" under Alaska law. Docket 144 at 9. He also argues that Mew was in a position to prevent or eliminate the discrimination because he could have disciplined the offending employees and put an end to the retaliatory investigations. Docket 144 at 9. But Mew suggests that Plaintiff's argument is strained. He says: "Both *Mills* and *Ellison* have expressly declined to confirm individual liability under AS 18.80.260." Docket 171 at 4. To the extent that individual liability is permitted for aiding and abetting, the actor must "know[] that the other's conduct constitutes a breach of duty and give[] substantial assistance or encouragement to the other." *Ellison*, 118 P.3d at 1070. Mew argues that while Henry alleges that Mew engaged in discriminatory or retaliatory acts, he attempts to skirt the prohibition on individual liability by recharacterizing it as "aiding and abetting." Docket 171 at 4. Plaintiff expressly argues that "Chief Mew encouraged the retaliation and discrimination against [him] by taking willful

action of forbearance in a situation where action was required." Docket 144 at 9. Mew suggests that Plaintiff cannot have it both ways: he can't simultaneously accuse Mew of retaliation, while recharacterizing the same behavior as "aiding and abetting" the retaliation of others. The Court, however, is not convinced. It is entirely possible that an individual can retaliate directly and also aid the retaliation of others. The Court agrees with Plaintiff that there are genuine issues of material fact which preclude summary judgment on Count I. **Summary Judgment as to Count I is DENIED at this juncture**.[4]

## B.    Count II - Wrongful Termination

Plaintiff seeks money damages for wrongful termination by the Municipality, claiming that his termination for reporting and opposing unlawful conduct amounted to the tort of wrongful termination in violation of the public policy of the State of Alaska. Docket 1-1. The Municipality seeks summary judgment dismissing Count II, arguing that Plaintiff has legal remedies under the statute cited in Count I which embodies the policy he invokes:

---

[4] Mew also argues that even if Plaintiff had a basis for seeking monetary damages under the ADA, Plaintiff did not file an EEOC complaint against Mew - only against the Municipality - so any claim against Mew must fail for failure to exhaust administrative remedies. Docket 81 at 5-6. The Municipality also seeks dismissal of Count I on the grounds that Plaintiff has failed to exhaust his administrative remedies. Docket 100 at 5. The issue of exhaustion was, however, addressed by other briefing, and will be addressed by separate order. Mew also argues that he cannot be liable for retaliation under the ADA, because ADA retaliation claims are redressable only by equitable relief and the availability of compensatory and punitive damages are limited and do not include retaliation. Docket 81 at 5. The Court addresses this argument in Section D, below.

AS 18.80.220.  Accordingly, he should not be permitted to assert an independent tort claim for an alleged violation of public policy. Docket 100 at 3-4.

Plaintiff complains that the Municipality has sought summary judgment on Count I, so its argument that Count II should be dismissed because he has a remedy under the statutes cited in Count I is "confusing." Docket 146 at 3. Moreover, Plaintiff argues that the cases relied upon by the Municipality do not stand for the broad proposition the Municipality articulates. Docket 146 at 3. Plaintiff argues that a statutory and a tort claim may co-exist.

In some districts, "if a statutory remedy exists, a common law wrongful discharge claim based on the same conduct is precluded." *See Shapiro v. Am. Bank [FSB]*, No. 3:12-CV-1358-AC, 2013 WL 6157266, at *3 (D. Or. Nov. 21, 2013). The Alaska Supreme Court has expressly "declined to recognize independent torts based on contravention of public policy where there are adequate legal alternatives." *Ruest v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 813 n.13 (Alaska 2005).  Failing to recognize an independent tort is different, however, from permitting alternative causes of action. The Alaska Supreme Court has allowed a Plaintiff to amend her complaint *post-trial* to reflect that the claim which was brought as a public policy tort was "presented to the jury as a retaliation claim in conformance with the elements that would be necessary for a wrongful termination claim under AS 18.80.220." *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 918 (Alaska 1999).  In *VECO*, the wrongful termination claim originated as a public policy tort,

but at trial the proof conformed to a retaliation claim under AS 18.80.220. The Alaska Supreme Court found that the defendant "did not suggest how it might have tried the case differently if it had known throughout the lawsuit that [Plaintiff] would prosecute her wrongful termination claim under AS 18.80.220." *Id.*

**The Court declines to grant summary judgment as to Count II, but notes that Counts I and II are alternative claims based upon the same allegations.**

### C.     Count V - Fraud in the Inducement

In the First Amended Complaint, Plaintiff alleges that the Defendants concealed material information from him during the mediation of his EEOC complaint – specifically, the existence of a pending IA investigation against him – in order to induce him to settle the EEOC complaint.  Plaintiff complains that the EEOC Settlement Agreement "included a list of IA claims that were to be expunged from [Plaintiff's] personnel files." Docket 1-1 at 13. Mew argues that there are no facts to support the claim of fraudulent inducement. Specifically, there was no misrepresentation, fraud, detrimental reliance, or loss. Docket 171 at 6. Mew seeks summary judgment on this claim. Docket 81 at 7. Mew explains that in the course of investigating whether officer J.W. was fit to perform his duties, it came to the attention of the investigating officers that Plaintiff had knowledge of his condition. Accordingly, the investigator recommended that another investigation be opened as to Plaintiff to determine whether Plaintiff took appropriate action regarding his subordinate.

Docket 81 at 8. Because there was already an ongoing EEOC complaint pending against the Municipality by Plaintiff, Mew directed that the Department should not proceed with any IA investigation of Plaintiff while the EEOC complaint was pending. Three weeks after the EEOC charge was settled, the IA investigation resumed. Following an interview with Plaintiff, the investigation was closed as "Not Sustained." Docket 81 at 8. Mew argues that Plaintiff is estopped from asserting any reliance on a lack of further IA investigations because the Release that Plaintiff signed in the settlement, he expressly warranted that "no promise or inducement has been offered or made except as herein set forth." Docket 81 at 9. Finally, Mew argues that Plaintiff has no pecuniary loss from his alleged reliance on any misrepresentation. In the absence of damages, Mew argues, Plaintiff's claim cannot go forward. *Id.* at 11 (citing Cooper v. FAA, 596 F.3d 538 (9th Cir. 2010). The Municipality joins Mew's argument on this count. Docket 100 at 8-9. The Municipality further explains that any "nominal losses" that Plaintiff may allege are insufficient to justify a fraudulent misrepresentation claim.

In response, Plaintiff argues as follows:

> Chief Mew concedes that the IA investigation into Lt. Henry would appear retaliatory while Lt. Henry's EEOC complaint was pending, but asks the Court to accept that somehow the appearance of impropriety would disappear immediately upon settlement of those claims. If anything, initiation of an IA investigation into actions that occurred prior to the filing of the EEOC complaint appears more retaliatory because it was initiated only after the

EEOC Complaint was settled, and only after Lt. Henry waived his ability to
bring claims of retaliation.

Docket 144 at 19.

The Ninth Circuit has identified the elements of intentional misrepresentation as "(1) a

misrepresentation of fact or intention, (2) made fraudulently (i.e., with scienter), (3) for the

purpose of inducing another to act in reliance, (4) with justifiable reliance by the recipient,

(5) causing loss." *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp*., 221 P.3d

977, 987-88 (Alaska 2009). The Municipality argues that Plaintiff's loss was merely a change

in bargaining position, and that "there is no precedent in Alaska for considering a change in

bargaining position to constitute in itself a loss in a fraud action. . . . The loss in fraudulent

misrepresentation must be a pecuniary loss that is caused by the plaintiff's reliance on the

misrepresentation." *Anchorage Chrysler*, 221 P.3d 991.

Although Plaintiff has alleged damages in excess of $100,000, (Docket 1-1 at 13),

Plaintiff's alleged losses related to the fraudulent inducement claim amount only to giving

up his rights to further litigate the EEOC complaint, and *possibly* accepting less money in

settlement that he might otherwise have accepted. Docket 144 at 15. The First Amended

Complaint reflects that three months after the EEOC settlement, the IA investigation at issue

resulted in a finding that Plaintiff did not violate APD policies regarding issues related to

J.W.'s medical status. Plaintiff was exonerated from any wrongdoing. It is unclear how more

timely knowledge of that investigation would have changed the outcome of the EEOC settlement. The Court finds that the timing of the IA investigation, which Defendants have conceded was delayed until the EEOC complaint was settled, causes some concern. However, that factual issue is also relevant to Plaintiff's claims of ongoing retaliation and wrongful discharge. Any money damages Plaintiff could recover are encompassed by those two claims. Plaintiff lacks the element of damages to go forward with a fraudulent inducement claim, even though the evidence of fraud, if proven, is relevant to other causes of action. **Summary Judgment is therefore granted to Defendants as to Count V.**

> **D.** **Count VI - Violation of Title I and Title V of the Americans With Disabilities Act of 1990**

In Count VI, Plaintiff complains of retaliation under the ADA, alleging injuries including economic loss, loss of enjoyment of life, and deprivation of his equal employment opportunities. Docket 1-1 at 13-14. The Municipality seeks summary judgment regarding both ADA Titles.

> **1. Title I of the ADA**

The ADA prohibits local governments from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training and other terms, conditions, and privileges of employment. 42 U.S.C. § 12111. The Municipality argues that Plaintiff opposed discrimination against

*another individual* who was disabled – not that he himself was a qualified individual with a disability. The Municipality argues that Plaintiff has no viable claim under Title 1 of the ADA and summary judgment should be entered accordingly. Docket 100 at 5. Plaintiff's response is that he does not seek damages under Title I of the ADA and merely cites the definitions portion of this provision. Docket 146 at 6. Accordingly, the Court finds that Plaintiff does not oppose a ruling that he may not obtain damages under Title I of the ADA**. The Portion of Count VI alleging a violation of Title I of the ADA is dismissed.**

### 2. Title V of the ADA

The Municipality also moves for partial summary judgment with respect to Title V of the ADA, arguing that to the extent Plaintiff seeks money damages his claim is frivolous because ADA retaliation claims are redressable only by equitable relief. Docket 100 at 4 (*citing Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009)). But Plaintiff argues that "front pay" is the monetary and functional equivalent of the equitable remedy of reinstatement. Docket 146 at 5 (*citing Polard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001). Plaintiff is correct. While punitive and compensatory damages are not available under an ADA retaliation claim because such claims are limited to the equitable relief specified in 42 U.S.C. § 2000e–5(g)(1), (*see Alvarado*, 588 F.3d at 1270), the Ninth Circuit has determined that under the ADA, back pay is an equitable remedy to be awarded by the district court. Similarly, front pay is the monetary equivalent of the equitable remedy

of reinstatement. *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1012 (9th Cir.2010) (*citing Pollard,* 532 U.S. at 846).

Plaintiff has not specifically sought "compensatory and punitive" damages in Count VI. Rather, Plaintiff alleges economic loss, loss of enjoyment of life, and deprivation of his equal employment opportunities. Docket 139-3 at 12.Equitable remedies are available. **The Municipality's motion regarding Title V of the ADA is denied.**

### E.    Claims Previously Settled

The Municipality seeks summary judgment on claims that were settled by the EEOC on June 4, 2013. Docket 100 at 7-8. Specifically, Plaintiff's Complaint alleges retaliatory conduct occurred prior to June 4, 2013, and seeks damages. Docket 1-1, Counts I and VIII. But Plaintiff suggests that because the EEOC release was fraudulently obtained, he has not barred from pursuing these claims. Docket 149 at 23. He argues that Defendants' estoppel argument is not applicable to a release obtained by misrepresentation. *Id.* But the Municipality argues that Plaintiff cannot simultaneously retain the monetary proceeds of the settlement agreement while arguing the agreement was invalid. Docket 170 at 5.

As discussed in Section C above, the Court finds  the timing of the IA investigation, and the fact that it was concealed from the Plaintiff, causes some concern. Although the Court has found that Plaintiff does not meet the criteria to pursue a claim of fraudulent inducement (because Plaintiff doesn't meet the damages prong), genuine issues of material

fact remain as to whether the EEOC settlement agreement was obtained fraudulently. Fraud is, as the Court has previously noted, is relevant to Plaintiff's claims of ongoing retaliation and wrongful discharge. Accordingly, the Court cannot determine at this juncture whether Plaintiff should be estopped from pursuing claims that accrued prior to the EEOC settlement. **The Municipality's motion for summary judgment on this issue is DENIED.**

## IV.    MOTION TO STRIKE (Docket 142)

Plaintiff seeks to strike the declaration of William Earnhart (Docket 82) filed in support of Defendant Mew's Motion for Summary Judgment at Docket 81. Plaintiff complains that he has been prohibited from deposing current and former municipal attorneys and thus cannot challenge the inadmissible hearsay in Mr. Earnhart's declaration. Docket 142 at 3. Plaintiff specifically seeks to strike paragraphs seven and nine from Mr. Earnhart's declaration.

In response, Defendants argue that Plaintiff has placed Defendants' intent regarding the settlement agreement at issue in the fraudulent inducement claim.

The Court has dismissed the fraudulent inducement claim (Count V) for reasons unrelated to the disputed paragraphs in Mr. Earnhart's declaration. *See* Section III.C., *supra*. **Accordingly, the Motion to Strike is DENIED AS MOOT**.

**In light of the foregoing, the Court orders as follows:**

1. Defendant Mew's Motion for Summary Judgment at **Docket 81** is **GRANTED IN PART AND DENIED IN PART**.

2. The Municipality's Motion for Partial Summary Judgment at **Docket 100** is **GRANTED IN PART AND DENIED IN PART**.

3. **Count V** is **DISMISSED.**

4. The Portion of **Count VI** alleging a violation of **Title I** of the ADA is **DISMISSED.**

5. The Motion to Strike the Declaration of William Earnhart at **Docket 142** is **DENIED AS MOOT.**

6. The Motions requesting hearings at **Dockets 163, 179, and 180** are **DENIED**.

**IT IS SO ORDERED** this 15th day of July, 2016.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE