Ray R. Brown
Molly C. Brown
Margaret Simonian
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK  99501
Phone:  907-277-5400
Fax     907-277-9896
Email:  ray@dillonfindley.com
Email:  molly@dillonfindley.com
Email:  meg@dillonfindley.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ANTHONY HENRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MUNICIPALITY OF ANCHORAGE, ) | |
| ANCHORAGE POLICE DEPARTMENT,) | |
| and MARK MEW, ) | |
| ) | |
| Defendants. ) | |
| ) | Case No. 3:15-cv-00187-RRB |

**PLAINTIFF'S MOTION FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C. § 552a PRIVACY ACT**

**I.    INTRODUCTION**

Facts and information related to the Federal Bureau of Investigation ("FBI") are critical to this case.  This includes conclusions by Rick Brown, the MOA[1] "independent

---

[1]    "MOA" is the Municipality of Anchorage.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 1 of 18

Case 3:15-cv-00187-RRB   Document 222   Filed 09/07/16   Page 1 of 19

investigator"[2] regarding: (1) when the FBI became involved in the federal case known as Cool Arrows, (2) the FBI's use of K.B. as an informant or source, (3) the so far unsubstantiated FBI investigation into General Thomas Katkus for interference in "the federal investigation,"[3] and (4) the FBI investigation into the allegations made by E.P., a confidential informant, and/or Anchorage Police Department ("APD") officers against Lt. Henry and General Katkus that Rick Brown's report supposedly substantiated.

The basis for Rick Brown's findings that Lt. Henry provided "false and evasive" information during his investigation is directly tied to these FBI facts. Rick Brown, in his report, makes findings about the FBI without first obtaining evidence from the FBI that could either corroborate or undermine his findings. The documents maintained by the FBI relating to these issues have not been produced here and cannot be produced without this Court's order under the Privacy Act of 1974 (5 U.S.C. § 552a). Lt. Henry asks the Court to issue that order to obtain this important discovery, including:

(1) Information pertaining to Safe Streets Task Force ("SSTF") Officers Eric Smith, Christopher Nelson, and Joseph Hazelaar and APD Special Assignment Unit ("SAU") officers Jack Carson and Seth McMillan and their involvement in the SSTF/Organized Crime Drug Enforcement Task Force ("OCDETF") Cool Arrows case.

(2) Information supporting any federal investigation conducted by Special Agent Steve Payne ("SA Payne") and Lt. Jack Carson into General Katkus'

---

[2] The Rick Brown investigation is filed under seal with this Court at Dkt. 115. Because the FBI will be responding to this Motion, and will not have access to the sealed report, Lt. Henry provides the relevant excerpts of the report as Exhibit A.

[3] Exhibit A, Excerpt of MOA, APD Internal Investigation Report at 6 - 7, Mar. 15, 2015 (CONFIDENTIAL).

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 2 of 18

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

alleged interference in the investigation of illegal drug activities in the Alaska National Guard ("AKNG") Recruiting and Retention Unit.

(3) Information relating to a public corruption investigation regarding Lt. Henry's alleged interference with drug and sexual assault investigations in the AKNG.

(4) Information regarding any additional FBI and/or SSTF investigations (separate from the SSTF/OCDETF Cool Arrows case) that were directed toward illegal drug activities involving the AKNG Recruiting and Retention Unit, including whether such investigations existed, during the February to July 2010 time frame.

(5) Information about K.B. as a source or witness into any of the investigations referenced above.

(6) Any statements, or summaries of statements, made by Officer Seth McMillan or Lt. Jack Carson in connection with a public corruption investigation into Lt. Henry or General Katkus.

## II. FACTS AND PROCEDURAL HISTORY

The centerpiece of Rick Brown's investigation is that Lt. Henry interfered with two 2010 investigations by improperly releasing names of informants to General Katkus and that this disclosure ultimately shut down the investigations. However, neither investigation existed. There is not a single document at APD to support the existence of an SAU investigation into the AKNG Recruitment and Retention Unit, nor is there a single document at APD to support an SAU or FBI investigation into drugs or sexual assaults perpetrated by the AKNG Recruitment and Retention Unit. There is also not a single document at APD that supports a finding that the FBI investigated General Katkus for interfering with a drug investigation. Despite the lack of any independent support,

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 3 of 18

Rick Brown's report finds these investigations existed and that Lt. Henry interfered with them. The Rick Brown report led to Lt. Henry's termination.

Special Agent Anne Kirkland ("SA Kirkland") testified at her May deposition that she supervised the joint APD and FBI SSTF in 2010, and that the APD officers assigned to the task force worked at the FBI and were under her supervision.[4] SA Kirkland explained that

> normally, a lot of our cases started with APD reports because they would do a – if S.A.U. was out on the streets, they'd do a traffic stop, and that would lead to us adopting it federally if it met the – weight requirements for whatever drug was discovered in the traffic stop.[5]

The only investigation that existed involving the informant Lt. Henry is alleged to have improperly revealed was an FBI SSTF investigation that was eventually called Cool Arrows, and that later attained the coveted designation of an OCDETF case. The Cool Arrows case was successful. The informant Lt. Henry is charged with exposing (who supposedly stopped cooperating after the February 25, 2010 meeting with General Katkus), was essential in making the case a success. In fact, SA Kirkland met with General Katkus in early March 2010 and shared information about the investigation, just

---

[4] Exhibit B, Excerpts from Kirkland Dep. at 10:1 - 12:4, May 12, 2016 (CONFIDENTIAL).

[5] *Id.* at 14:23 - 15:19.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 4 of 18

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

weeks after the meeting where Rick Brown says Lt. Henry violated APD policy by sharing the same information.[6]

To make his case against Lt. Henry, Rick Brown concluded that there were two separate and distinct investigations involving the same informant: one conducted by the APD into the AKNG Recruitment and Retention Unit and one conducted by the FBI SSTF. Rick Brown repeatedly refers to an "on-going SAU drug dealing investigation" into the AKNG, even though there are no APD police reports to support that any such investigation existed. In fact, at his deposition Lt. Jack Carson, the primary source of Rick Brown's findings and conclusions, admitted there were no APD police reports substantiating his claim that the SAU investigated the AKNG Recruitment and Retention Unit for drug dealing in 2010.[7] SA Kirkland testified that SAU was only doing short-term, street level, drug investigations, and if it was a large scale drug operation that involved transporting drugs across state lines it was handed off to the FBI, DEA or the Vice Unit within APD.[8] SA Kirkland remembered the federal drug investigation with the informant at the center of Rick Brown's report because it was "the first OCDETF case we'd had in quite some time."[9]

---

[6]  *Id.* at 39:7 - 40:8.

[7]  Exhibit C, Excerpts from Carson's Dep., Volume II at 210:17 - 211:1, May 5, 2016 (CONFIDENTIAL).

[8]  Exhibit B at 16:12 - 17:6.

[9]  *Id.* at 18:6 - 14.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 5 of 18

Importantly, SA Kirkland testified that the investigation did not involve the AKNG except that the informant E.P. worked as a full time employee at the AKNG.[10] She testified that from the beginning the SSTF was involved in this investigation that was initiated on February 23, 2010.[11] She explained that they "looked into several of [E.P's] co-workers" . . . "right away," but determined they were not involved.[12] The FBI shared information about the case with the command staff at the APD.[13]

This testimony refutes several crucial findings and conclusions in Rick Brown's report. For example, Mr. Brown found that the FBI investigation did not begin until mid-March.[14] He determined that the (unsubstantiated) SAU investigation and the FBI investigation were "running on two separate tracks."[15] Mr. Brown found that the SAU investigation was "compromised in the first seventy-two hours of its initiation,"[16] because somehow exposing E.P. to General Katkus negatively impacted one investigation but not the bigger FBI investigation. But SA Kirkland explained that the FBI was involved at this early stage because the investigation was headed in the direction of a

---

[10] *Id.* at 18:15 - 19:1.

[11] *Id.* at 22:15 - 23:17, 179:4 - 183:15.

[12] *Id.* at 18:21 - 19:4.

[13] *Id.* at 25:1 - 18.

[14] Exhibit A at 2.

[15] *Id.*

[16] *Id.*

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 6 of 18

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

large federal investigation from the beginning; it did not involve the AKNG; and it was not compromised.[17]

One of Rick Brown's most specific honesty findings against Lt. Henry stemmed from Lt. Henry's insistence that the drug investigation involving E.P. was an OCDETF case from the beginning. Rick Brown stated: "[i]n this investigator's opinion, t[sic] LT Henry's continual references to the federal OCDETF case were attempts to evade his accountability for the disclosures to AKNG command staff of confidential informant identities and AKNG drug dealing issues under investigation."[18] Yet, SA Kirkland explained that the FBI believed this case had the potential to become an OCDETF case from the beginning, and that APD and the FBI referred to the case that way from the beginning of March.[19] SA Kirkland also met with General Katkus in early March and briefed him on the investigation.[20] This is the same type of meeting for which Rick Brown recommended firing Lt. Henry and instituting a criminal investigation.

SA Kirkland also explained that the FBI never suspected that General Katkus had interfered with the drug investigation.[21] Even so, Rick Brown found that "the

---

[17] Exhibit B at 150:14 - 151:2; 200:7 - 16.

[18] Exhibit A at 3.

[19] Exhibit B at 25:19 - 27:22.

[20] *Id.* at 95:13 - 102:15.

[21] *Id.* at 50:14 - 17.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 7 of 18

Case 3:15-cv-00187-RRB   Document 222   Filed 09/07/16   Page 7 of 19

compromising of the drug investigation provided AKNG suspects the opportunity to dispose of physical evidence, and to concoct stories and alibis."[22] The only support for this outrageous allegation came from Mr. Brown's interview with K.B.[23] SA Kirkland was familiar with K.B., who is the other source Rick Brown alleges Lt. Henry wrongfully exposed, and whose exposure Mr. Brown claims compromised a sexual assault investigation into General Katkus.

SA Kirkland testified that K.B. had made accusations against General Katkus in 2009 about "gun running, drugs, prostitution, sexual assaults, a whole litany of accusations," but that "there was no validity" to them and it was referred to military investigators.[24] She viewed K.B. as a disgruntled employee, not a source or informant.[25] SA Kirkland also said that K.B. was not credible and that K.B. and another person "forced a woman into their vehicle, took her to a location, and were basically trying to elicit information from this female about a sexual assault that they believed she had been a victim to."[26] This FBI information about K.B. undermines Rick Brown's conclusions

---

[22] Exhibit A at 5.

[23] *Id.* at 10.

[24] Exhibit B at 50:21 - 51:17.

[25] *Id.* at 184:19 - 185:3.

[26] *Id.* at 51:18 - 52:11.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB   Document 222   Filed 09/07/16   Page 8 of 19
Page 8 of 18

about K.B.'s status and credibility in this supposed investigation occurring in June of 2010.

Lt. Kevin Vandegriff at APD interviewed FBI SA Payne in connection with Rick Brown's investigation. There are significant problems with this interview and Rick Brown's conclusions derived from it. First, Lt. Vandegriff recorded the interview as required by the Internal Investigations Policy stating that "the complete interview ***shall be recorded***. The recording will note the time at which breaks are taken in the interview process, the person requesting the break, and the time at which the interview resumed."[27] But, then, Lt. Vandegriff deleted the recording in violation of APD policy.[28] It is impossible to know what Lt. Vandegriff told SA Payne to influence his responses or what SA Payne actually said. Second, there was no formal *Touhy* Request made to conduct the interview.[29] This is required by federal law and regulation.[30] It calls into question the context of the call and the validity of the information about federal investigations that Lt. Vandegriff claims he gathered. Third, SA Kirkland who actually ran the drug

---

[27] Exhibit D, Excerpt of IA Policy 2.04.005, Internal Investigations at 2 (CONFIDENTIAL) (emphasis added).

[28] Exhibit E, APD Policy and Procedure 3.10.030, Digital Audio Recording Policy.

[29] A *Touhy* request stems from *ex. rel. Touhy v. Regan*, 340 U.S. 462 (1951) and governs, in some instances, the release of information from federal agencies.

[30] *Id.*

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 9 of 18

Case 3:15-cv-00187-RRB   Document 222   Filed 09/07/16   Page 9 of 19

investigation and SSTF in 2010 contradicted Lt. Vandegriff's summary of SA Payne's interview.

Lt. Vandegriff's summary suggests that SA Payne and the FBI were involved in a drug investigation into the AKNG in 2010.[31] SA Kirkland said there was no drug investigation into the AKNG other than the Cool Arrows case.[32] The summary says that SA Payne told Lt. Vandegriff "he was assigned to work the case and both Jack and Seth had invaluable knowledge of the Guard and its inner workings."[33] The summary includes a long quote from SA Payne that suggests General Katkus was the "potential subject" of the drug investigation in February of 2010. SA Kirkland said that SA Payne's claim that General Katkus was a "potential subject" of the investigation was not true.[34] SA Payne supposedly said that Lt. Henry's meeting with General Katkus in February of 2010 compromised "the informant so early in the investigation rendered him no longer

---

[31] Exhibit F, Narrative Report of Lt. Kevin Vandegriff, APD Internal Affairs, Telephone Interview with FBI SA Steve Payne at 2, Nov. 24, 2014 (CONFIDENTIAL).

[32] Exhibit B at 61:17 - 62:5.

[33] Exhibit F at 2.

[34] Exhibit B at 45:9 - 13.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Page 10 of 18

effective."[35] SA Kirkland testified this was not accurate.[36] In fact, SA Kirkland testified that SA Payne was not the case agent on this case.[37]

While Rick Brown alleges that there was an investigation in June of 2010 into drugs, sexual assaults and General Katkus, he never makes clear whether this was an APD investigation or FBI investigation. The only action associated with this June 2010 investigation that Rick Brown describes is an interview on June 3, 2010 of AKNG Recruiter J.N. conducted in the FBI parking lot by APD Officer Seth McMillan at the request of SA Payne.[38] Rick Brown claims this meeting was set up by K.B. who was the source of information and a confidential informant. Rick Brown finds that after this meeting Lt. Henry wrongfully forced Officer McMillan to reveal K.B. as a source to General Katkus.[39] Rick Brown makes three findings associated with this so called investigation: 1) that K.B. was a confidential informant who Lt. Henry improperly exposed, 2) that Lt. Henry ordered the investigation to be stopped, and 3) as a result of these two acts S.T. kept her already restricted report of a sexual assault restricted for two more years.

---

[35] Exhibit F at 1.

[36] Exhibit B at 57:21 - 58:7.

[37] *Id.* at 59:19 - 60:7.

[38] Exhibit A at 7.

[39] *Id.* at 3, 7 - 9.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 11 of 18

What is clear is that Rick Brown reaches these conclusions without the support of a single document establishing that any investigation actually existed in June of 2010. Instead, he relies on the claims made by Lt. Jack Carson and Officer Seth McMillan, and Lt. Vandegriff's summary of his interview with SA Payne. Officer McMillan, Lt. Carson and apparently SA Payne claim that this was an FBI investigation. Importantly, Lt. Vandegriff either did not ask, or did not note in his summary, whether SA Payne requested and authorized this June 3 interview in the FBI parking lot between Officer McMillan and J.N.. Lt. Vandegriff either did not ask, or did not note in his summary any questions about K.B. serving as an informant in this so-called investigation. In fact, the only evidence supporting that K.B. was an informant or source in any investigation comes from the statements made by Officer McMillan and Lt. Carson; statements made for the first time four years after the events supposedly occurred.

At their depositions, Lt. Carson and Officer McMillan claimed that in June of 2010 SA Payne contacted them and told them he was investigating General Katkus for interfering with a federal investigation.[40] Both Lt. Carson and Officer McMillan claim they were assisting with an FBI investigation into General Katkus and his interference with a drug investigation.[41] Officer McMillan claimed that he hid his involvement in this

---

[40] Exhibit C at 382:19 - 383:10.

[41] Exhibit A at 7 - 9; Exhibit G, Excerpts of McMillan Dep. at 178:7 - 183:7, April 18, 2016 (CONFIDENTIAL).

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 12 of 18

FBI investigation from his command at APD and did not record the interview he conducted on June 3 (in violation of APD policy), because it was an FBI investigation.[42] If this is true, there should be FBI documents proving that an investigation existed. If no such investigation existed, then Rick Brown's claims that Lt. Henry exposed K.B. improperly and compromised sexual assault reports are meritless.

Rick Brown also made findings that Lt. Henry's alleged disclosures negatively impacted APD's credibility with "specifically the FBI."[43] SA Kirkland explicitly disagreed with this finding.[44] But, the absence of any documents supporting this finding will significantly undermine its validity.

Lt. Henry filed a complaint in the above-captioned case alleging wrongful termination and fraud, in addition to other claims. In the course of discovery, Lt. Henry requested documents from the FBI that are relevant and necessary to the prosecution of these claims. Counsel for the FBI responded to the discovery request by withholding the documents, stating they were protected by the Privacy Act and therefore could not be disclosed to Lt. Henry without a court order. Lt. Henry now seeks an order from this Court pursuant to § 552a(b)(11) ordering production of the relevant FBI records.

---

[42] *Id.*

[43] Exhibit A at 4.

[44] Exhibit B at 78:23 - 79:2.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 13 of 18

On January 26, 2016, counsel for Lt. Henry submitted a *Touhy*[45] request to the FBI for all information related to Lt. Henry.[46] Lt. Henry's request sought all information possessed by the FBI regarding any discussions or investigations related to Lt. Henry's involvement in drug or sexual assault allegations related to the AKNG. Counsel for the FBI denied his request on the grounds that it extended to information pertaining to individuals other than Lt. Henry, and information pertaining to other individuals was protected under the Privacy Act.[47] Counsel for the FBI stated that the information protected by the Privacy Act may not be disclosed except pursuant a court order, citing to 5 U.S.C. § 552a(b)(11).

Lt. Henry now seeks an order pursuant to 5 U.S.C. § 552a(b)(11) ordering the FBI to produce the requested information.

## III. DISCUSSION

### A. The Privacy Act Cannot Block the Normal Course of Court Discovery Proceedings.

The Privacy Act does not change the standard of whether information is discoverable. Federal Rule of Civil Procedure 26(b)(1) permits discovery in civil actions

---

[45] *United States ex rel Touhy v. Ragen*, 340 U.S. 462 (1952).

[46] Exhibit H, Letter from Molly C. Brown to Richard VanVeldhuisen, Jan. 26, 2016 (attachments omitted).

[47] 5 U.S.C. § 552a(b).

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 14 of 18

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

of "any non-privileged matter that is relevant to any party's claim or defense . . . ." Information requested need not be admissible in evidence to be discoverable.[48]

The civil rules allow litigants the power to demand production of documents from non-parties.[49] The scope of documents or information that can be obtained from non-parties is the same as the scope of discovery generally under Rule 26.[50]

The Privacy Act is contained in 5 U.S.C. § 522a. It states:

> (b) No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be
>
> . . .
>
> (11) pursuant to the order of a court of competent jurisdiction.[51]

The Privacy Act cannot be used to block the normal course of court proceedings, including court-ordered discovery.[52] The Act also does not create a requirement that a party must show actual need as a prerequisite to invoking discovery.[53] Nor does it

---

[48] Fed. R. Civ. P. 26(b)(1).

[49] Fed. R. Civ. P. 45(a).

[50] *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014).

[51] 5 U.S.C. § 552a.

[52] *Clavir v. United States*, 84 F.R.D. 612, 614 (S.D.N.Y. 1979) (the exception for court orders "makes it completely clear that the act cannot be used to block the normal course of court proceedings, including court-ordered discovery").

[53] *Laxalt v. McClatchy*, 809 F.2d 888 (D.C. Cir. 1987); *see also Wallman v. Tower Air, Inc.*, 189 F.R.D. 566, 569 (N.D. Cal. 1999).

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Case 3:15-cv-00187-RRB   Document 222   Filed 09/07/16   Page 15 of 19
Page 15 of 18

establish a privilege that requires a party seeking disclosure under 5 U.S.C. § 552a(b)(11) to prove that its need for the information outweighs the privacy interest of the individual to whom the information relates.[54] A court can order the documents produced even if the agency's regulations would ordinarily require the subject's consent.[55] The Court should weigh the request as it would any request for discovery.

### B. The Standard for Granting a § 522a(b)(11) Motion is Relevance.

Thirty years ago the courts established that the usual discovery standards should be applied in ordering documents produced subject to the Privacy Act in *Laxalt v. McClatchy* holding:[56]

> Neither the statute nor anything in its legislative history specifies the standards for issuance of such a court order. We therefore find no basis for inferring that the statute replaces the usual discovery standards of the FRCP—in particular, Rules 26 and 45(b)—with a different and higher standard.[[57]]

Ninth Circuit district courts adopted this reasoning, holding that the standard for issuing a § 552a(b) (11) order depends upon standard discovery principles of relevance.[58] Courts will order production of documents subject to the Privacy Act if they are relevant.

---

[54] *Ford Motor Co. v. United States*, 825 F. Supp. 1081, 1083 (Ct. In't Trade 1993).

[55] *Christy v. United States*, 68 F.R.D. 375 (N.D. Tex. 1975).

[56] F.2d 885, 888.

[57] *Id.*

[58] *Hall v. Hous. Auth. of Cty. of Marin*, No. 12-04922 RS (JSC), 2013 WL 5695813, at *2-3 (N.D. Cal. Oct. 18, 2013); *Hassan v. United States*, No. C05-1066C, 2006 WL 681038 (W.D. Wash. Mar. 15, 2006)(following *Laxalt v. McClatchy*); *United States v.*

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB Document 222 Filed 09/07/16 Page 16 of 19
Page 16 of 18

The requested FBI documents are unquestionably relevant. Rick Brown made findings and based his conclusions on the non-existence and existence of two FBI investigations in 2010. Lt. Henry needs access to the FBI documents - or the confirmation that no such documents exist - to disprove Rick Brown's findings and conclusions.

There should be no concern for privacy or protection related to these documents, since the parties have already disclosed confidential information in this case that has been adequately protected under the Stipulated Protective Orders.[59]

A new protective order covering the documents produced by the FBI can be entered into should the court deem it necessary to protect an individual's privacy.

## CONCLUSION

The requested information is clearly relevant to Lt. Henry's claims and therefore should be produced. For the reasons explained above, this Court should grant the Motion and issue an order pursuant to 5 U.S.C. § 552a (11) directing the FBI to produce the requested documents.

---

*W.R. Grace*, 455 F. Supp. 2d 1140, 1147 (D. Mont. 2006)("This Court's discovery orders exempt any disclosure from sanctions established by the [Privacy] Act"); *Wallman* 189 F.R.D. 566, 569 (following *Laxalt v. MacClatchy*).

[59] Dkt. 12, Dkt. 14, Dkt. 51.

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 17 of 18

DATED this 6th day of September 2016, at Anchorage, Alaska.

        DILLON & FINDLEY, P.C.
        Attorneys for Plaintiff

        By: s/Margaret Simonian
        Margaret Simonian, ABA No. 9901001
        1049 W. 5th Avenue, Suite 200
        Anchorage, Alaska 99501
        Phone: 277-5400
        Fax: 277-9896
        Email: meg@dillonfindley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2016 a copy of the foregoing Plaintiff's Motion For Order Directing Disclosure of Records Subject to 5 U.S.C. § 552a Privacy Act was served electronically through the CM/ECF system on Douglas S. Parker and Sean Halloran.

s/Margaret Simonian

PL.'S MOT. FOR ORDER DIRECTING DISCLOSURE OF RECORDS SUBJECT TO 5 U.S.C § 552a PRIVACY ACT
*Anthony Henry v. Municipality of Anchorage, et al.*
Case No. 3:15-cv-00187-RRB
Page 18 of 18

# INDEX TO EXHIBITS

Exhibit A  Excerpt of MOA, APD Internal Investigation Report, Mar. 15, 2015 (CONFIDENTIAL).

Exhibit B  Excerpts from Anne Kirkland's Deposition, May 12, 2016 (CONFIDENTIAL).

Exhibit C  Excerpts from Jack Carson's Deposition, Volume II, May 5, 2016. (CONFIDENTIAL).

Exhibit D  Excerpt of IA Policy 2.04.005, Internal Investigations (CONFIDENTIAL).

Exhibit E  APD Policy and Procedure 3.10.030, Digital Audio Recording Policy.

Exhibit F  Narrative Report of Lt. Kevin Vandegriff, APD Internal Affairs, Telephone Interview with FBI SA Steve Payne, Nov. 24, 2014 (CONFIDENTIAL).

Exhibit G  Excerpts from Seth McMillan's Deposition, April 18, 2016 (CONFIDENTIAL).

Exhibit H  Letter from Molly C. Brown to Richard VanVeldhuisen, Jan. 26, 2016 (attachments omitted).

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896