IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANTHONY HENRY,<br><br>    Plaintiff,<br><br> vs.<br><br>MUNICIPALITY OF ANCHORAGE and MARK MEW,<br><br>    Defendants. | Case No. 3:15-cv-00187-RRB<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT IX (DUE PROCESS)**<br>**(Docket 472)**<br>**AND**<br>**SECOND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>**(Docket 503)** |

Plaintiff moves for partial summary judgment as to Count IX of the Second Amended Complaint,[1] which alleges a violation of due process under 42 U.S.C. § 1983.[2] Plaintiff argues that there are no genuine issues of material fact to preclude summary judgment in his favor as to Count IX.[3] The MOA opposes the motion, and also has moved for summary judgment as to Count IX. This matter has been fully briefed.[4]

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[5]

---

[1] Docket 197 at 13.
[2] Docket 472.
[3] *Id.*
[4] Dockets 503; 578; 631.
[5] Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of proof for showing that no fact is in dispute.[6] If the moving party meets that burden, then it falls upon the non-moving party to refute with facts that would indicate a genuine issue of fact for trial.[7] Summary judgment is appropriate if the facts and allegations presented by a party are merely colorable, or are not significantly probative.[8]

## II. BACKGROUND

The facts surrounding this highly contentious lawsuit have been discussed at length in prior briefing, as well as in various orders by this Court.[9] However, certain facts relevant to due process which previously have not been articulated by the Court are as follows:

The MOA terminated Plaintiff for "just cause" effective April 1, 2015, based on allegations in the Brown report which concluded that Plaintiff had violated multiple APD policies. The parties disagree as to whether this report was properly characterized as an internal investigation ("IA").[10] The parties do appear to agree that the MOA's personnel rules provide that APD can establish its own "written agency rules," and that the "APD Policy and Procedure Manual" includes provisions that define the discipline meted out by the MOA for "disciplinary and corrective action." The parties disagree as to whether the APD Policy and Procedure Manual applies to Lt. Henry.

Under the MOA's personnel rules, the MOA could terminate an employee for just cause, as defined in the Anchorage Municipal Code ("AMC").[11] In such an instance, the personnel rules provide a procedure for a grievance, arbitration, and a pre-disciplinary hearing, and the

---

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[8] *Id.; see also In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1995).
[9] *See* Docket 194.
[10] Dockets 472 at 3; 578 at 2.
[11] AMC § 3.30.0915.

*Henry v. Municipality of Anchorage, et al.*   Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX   Page 2
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 2 of 12

employee can opt into either a grievance (pre-termination) procedure *or* a post-termination procedure.[12]  If, upon notice of intent to terminate, the employee elects a pre-termination hearing, it must occur within fifteen days.[13]  If the employee selects a post-termination grievance and arbitration process, employment is deemed terminated at that point subject to challenge by a grievance, appeal to the mayor, and arbitration.[14]

The MOA argues that, upon being notified of the MOA's intent to terminate his employment, Henry was advised in accordance with the foregoing.[15]  He was informed of his impending termination, and his options were explained verbally and provided in writing.[16]  Plaintiff was provided with seven days to select from: (1) a pre-disciplinary hearing; (2) a post-disciplinary grievance and arbitration; or (3) neither a pre-disciplinary hearing nor a post-disciplinary grievance/arbitration.[17]  The written explanation was very clear that Plaintiff could only accept a pre-disciplinary or post-disciplinary option, but not both.[18]  Plaintiff selected the post-termination grievance and arbitration process, effectively waiving any pre-termination hearing.[19]

There is some factual dispute regarding when a copy of the Brown report was forwarded to the Alaska Police Standards Council ("APSC"), which formed the basis of a formal public action to revoke Plaintiff's police certificate.[20]  Plaintiff suggests it was only two weeks

---

[12] Docket 472 at 8 (*citing* AMC §§ 3.30.101, 3.30.102, 3.30.103.40).
[13] AMC § 3.30.103(B).
[14] AMC §§ 3.30.101–102.
[15] Docket 503 at 55.
[16] Dockets 472 at 4–5; 579-3.
[17] In addition to one of the three foregoing choices, Plaintiff could object to the hearing officer designated by the Municipality.
[18] Docket 579-3.
[19] Docket 472 at 5.  Employee Relations Director Usera ultimately denied the grievance on May 19, and on May 29, 2015, Mayor Sullivan denied Henry's Step 2 appeal; Henry subsequently "abandoned the arbitration process without explanation."  Docket 503 at 56.
[20] Docket 472 at 6.

*Henry v. Municipality of Anchorage, et al.*  Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX  Page 3
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 3 of 12

after his termination, prior to the resolution of his grievance. Plaintiff also alleges that the MOA's attorneys forwarded the Brown report to the Office of Special Prosecutions and Appeals in February or March 2015, before Plaintiff was even fired.[21] Defendants disagree, stating only that the Municipal Attorney forwarded the report to Judge Collins, who was serving as a special investigator for the State of Alaska. "Judge Collins is believed to have forwarded a copy to OSPA. Many months later, the Municipality also furnished a copy to OSPA."[22]

### III. DISCUSSION

In Count IX, Plaintiff asserts that his due process rights were violated. Specifically, he alleges that the MOA failed to provide him with procedural due process, including the right to a pre-termination hearing in addition to the opportunity to respond to the proposed disciplinary action before he was terminated.[23] He also complains that the MOA violated applicable APD policies, and that his termination unconstitutionally deprived him of his job,[24] improperly imposing a "stigma of moral turpitude."[25]

### A. Pre-Termination ("*Loudermill*") Hearing

Plaintiff argues that he was entitled to sufficient notice of the reasons for his termination, ***and*** an opportunity to present his side of the story ***before*** termination.[26] He complains that the MOA mandate that his right to a pre-termination hearing was contingent on his waiver of any post-termination process violates due process, and therefore is unconstitutional as a matter of

---

[21] *Id.* at 14.
[22] Docket 578 at 3.
[23] Docket 197 at 13.
[24] There is no dispute that Lt. Henry's employment was a "significant property interest" for purposes of a Due Process analysis. Docket 578 at 4.
[25] Docket 472 at 2 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Roley v. Pierce Cty. Fire Prot. Dist. No. 4*, 869 F.2d 491, 495 (9th Cir. 1989)).
[26] Docket 472 at 9.

*Henry v. Municipality of Anchorage, et al.*                                                                                Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX                                            Page 4
Case 3:15-cv-00187-RRB    Document 672    Filed 10/26/17    Page 4 of 12

law.[27]  "The intent of the pre-termination hearing under *Loudermill* is not to resolve all of the issues, but to give the employee an opportunity to respond to the facts upon which the charge is based, since more extensive, post-termination procedures are supposed to be available to address those issues."[28]  The problem with the MOA's policy, Plaintiff argues, is that it is designed to preclude an employee from litigating any employment-related issue.  He argues that, had he chosen to avail himself of a pre-termination hearing, he would have waived his right to any future litigation regarding his termination, including contesting the hearing officer's finding at a later date, the right to discovery, and any post-termination proceeding related to his wrongful termination claim.[29]  Although a pre-disciplinary decision could be appealed to the Alaska Superior Court, Plaintiff argues, appellate review is limited to "substantial evidence" under AMC § 3.30.103.

In response, the MOA argues that it simply is not true that Henry would have waived his right to any future litigation regarding his termination if he had elected a pre-termination hearing.[30]  "Under Alaska law, if Henry had elected a pre-termination hearing, or if he had elected neither a pre-termination hearing nor post-termination arbitration, he would have been entitled to sue the Municipality on his employment claims for breach of contract as well as on his independent statutory claims."[31]  "Only when electing the alternative remedy of post-termination arbitration does an employee forego the right to sue on his contract claims."[32]  The MOA explains that under AMC § 3.30.103, if Henry had pursued a pre-termination hearing, he could have appealed any of those legal rulings, subject to a substantial evidence standard, but that appeal of

---

[27] *Id.*
[28] *Id.* at 16.
[29] *Id.*
[30] Docket 578 at 4.
[31] *Id.* at 5 (*citing Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1149 (Alaska 1986)).
[32] *Id.* (*citing Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001); *Bruns v. Municipality of Anchorage*, 32 P.3d 362, 367–68 (Alaska 2001)).

*Henry v. Municipality of Anchorage, et al.*                                                            Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX                                                                  Page 5
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 5 of 12

termination would be separate from a claim of retaliation or otherwise wrongful termination. Henry was presented with a choice between a pre-termination hearing and a post-termination procedure, and was advised that acceptance of one was essentially waiver of the other. Defendants argue that Henry waived the right to a pre-termination hearing.[33]

The Supreme Court of Alaska has addressed the applicability of Federal due process rights in the context of Anchorage police officers. In *Storrs v. Municipality of Anchorage*,[34] the Alaska Supreme Court observed:

> The root of due process is the right to a hearing *before* a deprivation of property. [*Cleveland Bd. of Educ. v.*] *Loudermill,* 470 U.S. at [542] . . . . The nature of the employee's pretermination rights varies, depending in part on the nature of subsequent proceedings available. *Loudermill,* 470 U.S. at [545] . . . . The procedure should provide an initial check against a mistaken decision by the employer, ensuring that there are reasonable grounds to believe the allegations against the employee are true. *Id.* At a minimum, the employee must receive oral or written notice of the proposed discharge, an explanation of the employer's evidence and an opportunity to present his position. *Id.*[35]

The Alaska Supreme Court recently has weighed in again on the issue of due process in the context of internal termination hearings in *Brandner v. Providence Health & Servs., Washington*.[36] In *Brandner*, the Plaintiff was terminated from Providence Alaska Medical Center ("the Hospital") for violating hospital policy. He unsuccessfully challenged his termination through the hospital's internal post-termination hearing and appeal procedures. Dr. Brandner later sued in state court, seeking reinstatement and damages for procedural and substantive due process violations. The Alaska Supreme Court found that Dr. Brandner's due process rights were violated by the procedures the hospital employed "because he was not given any opportunity to be heard

---

[33] *Id*. at 9.
[34] 721 P.2d 1146 (Alaska 1986).
[35] *Id.* at 1149.
[36] 394 P.3d 581 (Alaska 2017).

*Henry v. Municipality of Anchorage, et al.* Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX Page 6
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 6 of 12

prior to the termination of his hospital privileges."[37]  Regardless of any procedures *after* terminating Plaintiff's hospital privileges, the Court found that these procedures did not remedy the failure to provide procedures *before* termination.[38]  However, the Alaska Supreme Court declined to articulate "what kind of opportunity to be heard" is required to meet due process concerns, noting only that a formal hearing is not necessarily required to provide pre-termination due process.[39]

        Plaintiff alleges that the decision to fire him was made in secret.  But, Defendants argue that Henry received notice of the proposed termination, received a copy of an explanation of the evidence against him, and was afforded an opportunity to respond.[40]  Defendants cite to the facts recited in Plaintiff's underlying motion, which reflect that Henry met with former Chief Mark Mew and Ms. Usera for his "pretermination meeting" on March 25, 2015.  At that time, he was provided with a copy of the Brown report and attachments, the MOA-generated election form, an unsigned "Disciplinary Action Report" describing the basis for termination (including the facts in the Brown report and relevant Municipal Code provisions), and a statement by Ms. Usera explaining the process.[41]  Absent from this factual summary is any opportunity for Henry to be heard on the day of his firing.  Plaintiff alleges that he "tried to discuss the allegations with those present at the meeting, but was precluded from asking meaningful questions and getting answers."[42]  However, the Court observes that the Brown investigation went on for six months

---

[37] *Id.* at 584.
[38] *Id.* at 589.
[39] *Id.* at 588.
[40] Docket 578 at 10.
[41] Docket 472 at 3–4.
[42] *Id.* at 5.

*Henry v. Municipality of Anchorage, et al.*                                                                              Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX                                 Page 7
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 7 of 12

*Henry v. Municipality of Anchorage, et al.*                                              Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX                                Page 7
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 7 of 12

prior to his termination, during which time Henry was interviewed and advised that Brown was looking at the facts and circumstances surrounding Henry's disclosures.[43]

As the Supreme Court explained in *Loudermill*, "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action."[44] A "pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."[45] "To require more than [notice and an opportunity to respond] prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."[46]

The Court is unclear whether this case more closely resembles *Storrs* or *Brandner*. The *Storrs* court determined that, after an investigation and interview process which went on for over two weeks, "the pretermination procedure followed by the Municipality comported with minimum federal due process requirements."[47] It also concluded "that Storrs received notice, an explanation of the evidence against him and a sufficient opportunity to respond during the course of the [prior] investigation."[48] Here, the Brown investigation went on for six months prior to Henry's termination. The question is whether the Brown investigation was akin to the investigation in *Storrs*, or whether Henry's firing more closely resembles that of the firing of the physician in *Brandner*.

---

[43] Docket 610-26 at 2.
[44] 470 U.S. at 545.
[45] *Id*. at 545–46.
[46] *Id*. at 546.
[47] 721 P.2d at 1149.
[48] *Id*.

*Henry v. Municipality of Anchorage, et al.*                             Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX                Page 8
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 8 of 12
*Henry v. Municipality of Anchorage, et al.*     Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX     Page 8
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 8 of 12

**B.     APD Policy and Procedure Manual**

Henry argues that the APD Policy Manual provides additional applicable rules regarding "Internal Investigation / Discipline."  Policy 2.04.010 states that its purpose is to "inform **all employees** of procedures governing disciplinary and corrective action," and provides "how the Department shall handle those complaints proven to be sustained."[49]  The policy also states that an employee has "the right to be heard, prior to the final imposition of discipline, for proposed discipline that could result in termination, demotion, suspension, or, [sic] disciplinary transfer."[50]  In fact, Henry argues, the APD's own administrative review board contains a provision titled "Pre-Disciplinary Review (Loudermill)" related to allegations of "suspension from duty or greater," and describes protections available to "all employees."

But, the MOA argues that Henry was not entitled to proceed under APD Policies 2.04.010 or 2.04.005, because Henry was a Police Lieutenant and was therefore not covered by the Collective Bargaining Agreement ("CBA").  The MOA argues that the referenced APD policies merely implemented the terms and conditions of the employment of police officers who were covered under the CBA, and that the only relevant MOA Personnel Rules setting forth due process available for a non-CBA employee confronting termination are found at AMC § 3.30.100–103.[51]

The Court has reviewed the APD Policies Manual, which is available online.[52]  The APD Policy and Procedures Manual does not appear to apply only to those officers covered by the CBA.  Rather, it expressly states that it applies to "all employees," while carving out specific

---

[49] Docket 472 at 8.
[50] Docket 59-10 at 4.
[51] Docket 578 at 7.
[52] http://www.muni.org/Departments/police/Documents/PUBLICPIManual022014.pdf.

*Henry v. Municipality of Anchorage, et al.*                                                                                              Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX                                                                                        Page 9

Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 9 of 12

sections that specifically address the interplay of the Manual with the CBA.[53] "Employee" is defined as "all personnel employed by the Department, regardless of rank, position, assignment, or gender."[54] Moreover, "[t]he regulations and procedures contained herein apply to all personnel under the organizational management of the Chief of Police, unless the applicability is specifically limited by the nature or language of that particular regulation or procedure."[55] "Descending order of rank" is defined as: "A) Chief of Police; B) Deputy Chief of Police; C) Captain; D) Lieutenant; E) Sergeant F) Patrol Officer/Warrant Officer/Detective (these different job titles share the equivalent rank status)."[56]

The Court is hard-pressed to conclude that the APD Policy and Procedures Manual was not applicable to Lt. Henry, absent some clear Alaska case law or legislative action indicating that it does not. Nevertheless, the questions of fact surrounding the adequacy of the pre-termination process remain the same.

## C. Reporting the Termination to the Alaska Police Standards Council ("APSC")

Henry also argues that, before he even submitted his grievance, the MOA forwarded the Brown report to the APSC, prompting formal public action to revoke his police certificate, and also facilitated an ALASKA DISPATCH NEWS article which stated that he lied, thus

---

[53] Procedures 2.04.000–005 state as follows: "The purpose of this policy is to inform all employees of procedures for accepting, processing, and investigating complaints." *Id*. at 82. "Collective Bargaining Agreement (CBA): Refers to the current contract in effect between the Municipality of Anchorage and the Anchorage Police Department Employees Association (APDEA)." *Id.* at 83. The CBA is not mentioned in sections 1 through 4, which discuss accepting and filing complaints, complaint investigation process general guidelines, commendations, and intake supervisor roles and responsibilities. *Id.* at 85–86. In section 5, Investigating Supervisor Roles and Responsibilities, the manual mentions the CBA three times, incorporating the CBA rules within the policy manual. In section 6, "Internal Affairs: Roles and Responsibilities," the CBA is mentioned one time. Following the filing of a complaint, Internal Affairs must "[n]otify the employee of the receipt of the complaint per CBA, when applicable." *Id.* at 88. The CBA is not mentioned in sections 7 through 12. *Id.* at 89–91.
[54] APD Policy and Procedure Manual § 1.01.000.
[55] APD Policy and Procedure Manual § 1.01.005.
[56] APD Policy and Procedure Manual § 1.01.000.

*Henry v. Municipality of Anchorage, et al.* Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX Page 10
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 10 of 12

forever affecting his ability to work as a police officer, as well as his ability to obtain top secret security clearance.[57] Henry argues that the MOA violated his right to due process by terminating him and sending the termination documents to the APSC without pre-termination notice and a hearing.

The MOA argues that Alaska law mandates that the Police Department report to APSC, within 30 days following the termination of an officer's employment, a detailed explanation of the reason the officer is no longer employed by the agency, as well as sustained allegations of conduct that may disqualify the officer from retaining certification.[58] Defendants suggest that if the Municipality's compliance with the State Regulation is a violation of due process, then Henry's claim properly lies against the State.

Essentially, this claim is a sub-category of Henry's underlying due process claim. If the MOA failed to provide an adequate pre-termination right to be heard, then its compliance with state law requiring disclosure after termination is irrelevant. If Henry was properly terminated, then its compliance with state law is not actionable.

## IV. CONCLUSION

The issue of due process in this matter hinges on whether Plaintiff was provided with an adequate opportunity to be heard pre-termination. The Court concludes that issues of fact remain in this regard, including but not limited to whether Plaintiff was aware during the Brown investigation that he was being investigated, with the possibility of termination, and whether he had an adequate opportunity to be heard during that investigation.

The motion for summary judgment at Docket 472, and the due process portion of the summary judgment motion at Docket 503, are **DENIED**.

---

[57] Docket 472 at 6.
[58] Docket 578 at 10 (*citing* Alaska Admin. Code tit. 13, § 85.090).

*Henry v. Municipality of Anchorage, et al.* Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX Page 11
Case 3:15-cv-00187-RRB   Document 672   Filed 10/26/17   Page 11 of 12

The Court notes that a number of counts now have been dismissed in this matter, and there are twelve remaining motions for the Court's consideration.[59] The parties are directed to evaluate this matter in light of the recent orders, to advise the Court on or before November 1, 2017 (via a joint or individual status reports), as to which of those motions remain relevant, and to withdraw those motions which are no longer relevant or upon which the parties have been able to reach a compromise. The Court will lift the stay after reviewing the status report(s).

IT IS SO ORDERED this 26th day of October, 2017, at Anchorage, Alaska.

                                                    */s/ Ralph R. Beistline*
                                                    RALPH R. BEISTLINE
                                                    Senior United States District Judge

---

[59] Docket Nos. 475; 478; 480; 482; 485; 486; 488; 491; 500; 507; 509; 513.

*Henry v. Municipality of Anchorage, et al.*                                                                                     Case No. 3:15-cv-00187-RRB
Order re Motions for Summary Judgment of Count IX                                           Page 12
Case 3:15-cv-00187-RRB    Document 672    Filed 10/26/17    Page 12 of 12