Douglas S. Parker, Alaska Bar 8311168
dparker@littler.com
Sean Halloran, Alaska Bar 9211080
shalloran@littler.com
LITTLER MENDELSON
310 K Street, Suite 400
Anchorage, Alaska 99501
Tel: 907.561.1214
Fax: 907.561.1215

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| **ANTHONY HENRY,**<br><br>    Plaintiff,<br><br>v.<br><br>**MUNICIPALITY OF ANCHORAGE, ANCHORAGE POLICE DEPARTMENT and MARK MEW,**<br><br>    Defendants. | Case No. 3:15-cv-00187-RRB |

## MOTION TO RECONSIDER DOCKET 672

Anchorage asks the court to reconsider its denial of summary judgment to the Municipality at Docket 672 with respect to the claim in Count IX of the complaint, as amended.

**A.  Post Termination Remedy Following Availability Of Pre-Termination Hearing.**

As the court recognized in its Order, the following facts are undisputed:

Henry met with (then) Chief Mark Mew and Ms. Usera on March 25, 2015 for a pre-termination meeting. At that time, he was provided with a copy of the Brown report and attachments and an unsigned Disciplinary Action Report describing the basis for termination (including the facts in the Brown report and relevant Municipal Code provisions). [Docket 672 at 7.] He was instructed that he was entitled to have a pre-termination hearing if he so chose, and provided a form on which he could have elected to receive one. [See Id.; Docket 161-4.] He was further instructed that the

Municipality offers a post-termination grievance / arbitration process to affected employees (including Henry) who waive a pre-termination hearing. [Id.]

Henry waived a pre-termination hearing on March 31, and elected at that time to participate in a post-termination grievance process culminating in arbitration. [Docket 506-5 at Ex. 74.] (After progressing through the initial steps of the grievance process, however, Henry waived arbitration. [Docket 506-4 at Ex. 34.])

After electing to waive a pre-termination hearing, Henry's employment was terminated on April 2, 2015. [Docket 474-2 at Ex. B; see Docket 506-5 at Ex. 75 (suspended on March 25).]

Due process required that Henry "must receive oral or written notice of the proposed discharge, an explanation of the employer's evidence and an opportunity to present his position", prior to the termination of his employment. Storrs v. Municipality of Anchorage, 721 P.2d 1146, 1149 (Alaska 1986). It is the Municipality's position that, regardless of whether this standard was met at any time earlier during the course of the Brown investigation, it was met when the Municipality gave Henry a copy of the Brown report, its attachments, and a Disciplinary Action Report describing the basis for the proposed termination, and informed him that he had a week to consider whether he wanted a pre-termination hearing to be held before his employment would end. In its Order, the court appeared to mistakenly believe that Henry's employment was terminated on March 25, when in fact it was not terminated until a week later, after Henry made his election to waive a pre-termination hearing and request post-termination grievance / arbitration. [Docket 672 at 7.]

The court recognized that Henry's argument is that a pre-termination hearing may not be made contingent upon forfeiting post termination remedies. Further, the court recognized that the Municipality's position in response is that Alaska law provides that when other post-termination remedies are not undertaken, as would have been the case if Henry had elected a pre-termination hearing, Henry was entitled to bring a lawsuit in the courts as a post-termination remedy in addition to any pre-termination process available to him. This is a pure issue of law, and not a question of fact. Thus, this court must decide whether Alaska law grants to Henry (and others) the right to sue his employer when no other post-termination remedy is initiated. If Henry could have filed suit, then as a matter of law he was not deprived of due process by the fact that the Municipality's grievance / arbitration process was only made available to those individuals that waive pre-termination hearings.

In Storrs, the Alaska Supreme Court stated as follows:

LITTLER MENDELSON
310 K Street, Suite 400
Anchorage, Alaska 99501
Tel: 907.561.1214
Fax: 907.561.1215

> The collective bargaining agreement provides for prompt review of grievances and binding arbitration of unresolved disputes. However, in the instant case APDEA refused to press Storrs' claim, hence no post-termination hearing occurred. In Alaska, Storrs' remedy lies in the courts; he may sue the Municipality for breach of contract.

Storrs, 721 P.2d at 1149-1150. Similarly, in Casey v. City of Fairbanks, the Alaska court held that "until and unless" an arbitration process is made available to affected public employees, those employees for whom arbitration is not available "must be permitted to seek judicial review of the decision to terminate them". Casey, 670 P.2d 1133, 1138 (Alaska 1983).

The Municipality suggests that it is immaterial how the plaintiff in Storrs received pre-termination due process. On reconsideration, this court should recognize that Alaska law, as set forth in Storrs and Casey, provides that an employee such as Henry, who is offered a pre-termination hearing, would have been entitled to then sue the Municipality if he felt aggrieved at the conclusion of that process. If Henry had a right to sue following a pre-termination hearing, then due process was fully satisfied by offering him a pre-termination hearing coupled with the availability of post termination litigation. Further, it is irrelevant that he could have elected to have a post-termination arbitration upon electing to waive a pre-termination hearing.

**B.     APD Policies.**

The Anchorage Police Department has hundreds of employees, including employees classified as either "executive", "non-represented" or "represented".[1] The department also has hundreds of pages of policies that comprise the department's Policy and Procedures Manual. Included are policies that pertain only to the sworn officers, such as, for example, policies governing pursuits, investigations, use of force, and use of confidential informants. There are other policies that pertain only to the work of dispatchers, records clerks, evidence clerks or others. Thus, while the Policy and Procedure Manual applies to all employees of the department, not all policies within the manual do.

In its Order at Docket 672, this Court stated that "The Court is hard-pressed to conclude that the APD Policy and Procedures Manual was not applicable to Lt. Henry, absent some clear Alaska case law or legislative action indicating that it does not." [Docket 672 at 10.] The Municipality does not suggest that the APD Policy and Procedures Manual did not apply to Henry. As a general

---

[1]     The department has approximately 555 employees, including 2 executives, and apx. 30 who are classified as "non-represented". The remainder are classified as represented. The 405 sworn officers within the department include members of each classification group.

matter, it did. The crux of the Municipality's argument was that there is clear legislative action establishing that a small number of discipline policies intended to govern represented employees (both sworn and unsworn), cannot lawfully be applied to Henry or others in APD who were classified as non-represented employees.

The Assembly is the governing legislative body of the Municipality. [MOA Charter § 4.01.] It has the same powers as does the Legislature at the State level. [AK Const. Art. X, §11; AS 29.04.010; AS 29.06.190; AS 29.06.410; MOA Charter § 3.01; MOA Charter Commentary § 3.01.] Its ordinances are codified in the Anchorage Municipal Code. [MOA Charter § 10.05.]

Anchorage Municipal Code 3.30.012 partially defines when the personnel regulations set forth in AMC 3.30.101-102 and 3.30.103 apply to "nonrepresented employees". [AMC 3.30.012.] That Ordinance specifies that department policies may "not conflict with the provisions of this chapter and collective bargaining agreements". Further, AMC 3.70.170 provides that the terms of negotiated collective bargaining agreements "may be substituted" for the personnel regulations that the Assembly has established by default, and to the extent that a collective bargaining agreement is in place, "such personnel regulations shall not be applicable to that agreement". [AMC 3.70.170.]

Thus, to the degree that APD Policies 2.04.010 and 2.04.015 implement the terms of a collective bargaining agreement, they are valid departmental policies and may be enforced. [AMC 3.30.012 and 3.70.170.] However, to the extent they are not implementing a collective bargaining agreement – i.e. by application to Henry or other non-represented employees – they are prohibited by Municipal Ordinance and may not be enforced. [AMC 3.30.012 and 3.70.170.]

It is unquestioned that APD policies 2.04.010 and 2.04.015 are in accord with the terms of the APDEA Collective Bargaining Agreement. It is unquestioned that APD Policies 2.04.010 and 2.04.015 provide a different disciplinary process than that which is set forth in AMC 3.30.101-102 and 3.30.103. Pursuant to AMC 3.30.012 and 3.70.170, therefore, the Department's discipline policies 2.04.010 and 2.04.015 may lawfully be applied only to the represented employees who are governed by the APDEA Collective Bargaining Agreement with which they are in accord. Otherwise, by legislative fiat, as established in ordinances passed by the Assembly, the personnel regulations set forth in AMC 3.30.101-102 and 3.30.103 must govern.

Henry himself summarized this concept in the 2014 grievance arbitration that he brought against the Municipality: "non-represented employees are not subject to any specific collective bargaining agreement and as such, are subject to the work rules established in the Anchorage Municipal Code, which is legislation enacted by the Municipal Assembly". [Docket 150-4 at 3.]

LITTLER MENDELSON
310 K Street, Suite 400
Anchorage, Alaska 99501
Tel: 907.561.1214
Fax: 907.561.1215

The Municipal Ordinances codified at AMC 3.30.012 and 3.70.170 are the clear legislative action that the court seeks indicating that the disciplinary process outlined in APD policies 2.04.010 and 2.04.015 does not apply in this specific instance, but that the process outlined in the personnel regulations at AMC 3.30.101-102 and 3.30.103 does apply.

For all the reasons articulated herein, this court should reconsider its ruling at Docket 672, and on reconsideration, grant summary judgment in favor of the Municipality with respect to the claim asserted in Count IX of the complaint, as amended.

Dated this 9th day of November, 2017.

LITTLER MENDELSON
Attorneys for Defendants

By: */s/ Douglas S. Parker*
Douglas S. Parker
Alaska Bar 8311168

By: */s/ Sean Halloran*
Sean Halloran
Alaska Bar 9211080

CERTIFICATE OF SERVICE:

I hereby certify that on the 9th day of November, 2017, a true and correct copy of the foregoing document was served on:

Molly C. Brown
Ray R. Brown
Jessica Dillon
Margaret Simonian
Dillon & Findley
1049 W. Fifth Avenue, Suite 200
Anchorage, AK 99501

By ☐ Hand  ☐ Mail  ☐ Fax
☑ Court's ECF filing system

*/s/ Nancy Murphy Kruse*
Nancy Murphy Kruse
Legal Assistant

LITTLER MENDELSON
310 K Street, Suite 400
Anchorage, Alaska 99501
Tel: 907.561.1214
Fax: 907.561.1215