IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANTHONY HENRY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MUNICIPALITY OF ANCHORAGE and MARK MEW,<br><br>　　　　　Defendants. | Case No. 3:15-cv-00187-RRB<br><br>**ORDER VACATING ORDER AT DOCKET 672, ON RECONSIDERATION, GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT REGARDING COUNT IX, AND LIFTING STAY (Docket Nos. 472, 503, 681, 682)** |

In Count IX of Plaintiff's Complaint, Plaintiff asserts that his due process rights were violated pursuant to 42 U.S.C. § 1983.[1] Specifically, he alleges that the Municipality of Anchorage failed to provide him with procedural due process, including the right to a pre-termination hearing in addition to the opportunity to respond to the proposed disciplinary action before he was terminated.[2] He complains that the Anchorage Police Department Policy and

---

[1] Docket 197 at 13.
[2] *Id.*

Procedure Manual ("APD Policies")[3] provides rules regarding "Internal Investigation / Discipline," and that the Municipality violated these policies when it terminated him.[4] But the Municipality maintains that, in this case, the processes outlined in the personnel regulations at Anchorage Municipal Code ("AMC") §§ 3.30.101-103 were applicable and properly applied.

Both parties moved for summary judgment on Count IX. The Court concluded that there were questions of fact surrounding the adequacy of the pre-termination process, and declined to award summary judgment to either party.[5]

The parties now seek reconsideration, arguing that the Court is presented solely with a question of law, and that no factual dispute exists.[6] Plaintiff seeks reconsideration based on the Court's conclusion that the APD Policies likely applied to him, arguing that, because it is undisputed that the Municipality failed to follow the applicable procedures therein, Plaintiff should prevail on this issue. The Municipality seeks reconsideration, arguing that the APD Policies do not apply to Plaintiff, but that, in any event, due process was met pursuant to the AMC when "the Municipality gave Henry a copy of the Brown report, its attachments, and a Disciplinary Action Report describing the basis for the proposed termination, and

---

[3] Elsewhere identified as the Anchorage Police Department Regulations and Procedures Manual. *See* Docket 59-10.
[4] *See* APD Policies 2.04.010 and 2.04.015.
[5] Docket 672.
[6] Dockets 681; 682.

*Henry v. Municipality of Anchorage, et al.*  Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay   Page 2
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 2 of 15

informed him that he had a week to consider whether he wanted a pre-termination hearing to be held before his employment would end."[7]  Accordingly, the Court granted reconsideration.  Since its initial order, the Court has reviewed the matter in detail, has resolved numerous motions *in limine*, has considered further briefing, and heard oral argument on this issue on January 31, 2018.  Based thereon, and for the reasons set forth below, reconsideration is hereby GRANTED.

## **DISCUSSION**

The primary question raised by Count IX of Plaintiff's Complaint is whether or not Plaintiff was deprived of his fundamental due process rights at the time of his termination according to the guidelines set forth in *Cleveland Board of Education v. Loudermill*.[8]  Initially, the Court must determine the proper procedures that apply when terminating a police officer who was not represented by a collective bargaining agreement.  Should the procedures set forth by AMC apply, should the procedures included in the APD Policies apply, or could either apply depending on the circumstances?  The Court's prior order waded into the thorny issue of whether due process had been met, without first determining *which policies* were applicable in this instance.

---

[7] Docket 682 at 2.
[8] 470 U.S. 532 (1985).

*Henry v. Municipality of Anchorage, et al.*      Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay      Page 3
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 3 of 15

**APD Policies**

The APD Policies explain APD's internal discipline policies in sections 2.04.010 and 2.04.015. In a nutshell, when an internal investigation is completed, the supervisor will submit the investigation to the unit or shift commander for review. The commander will review the investigation with the supervisor and make a recommendation of corrective or disciplinary action to the chain of command. If the commander recommends discipline, the recommendation shall be forwarded to the Chief of Police. The Chief of Police will review the investigative report and supporting documents and may accept the findings and recommendations, change the findings and/or recommendations, or remand the case for additional investigation, all or in part. The Chief of Police has the final determination if the complaint is sustained, not sustained, exonerated, or unfounded. Prior to the final imposition of discipline that could result in termination, the employee may exercise the right to be heard in person before the Administrative Review Board. APD Policies section 2.04.015 establishes the APD Administrative Review Board and prescribes its methodology. The Administrative Review Board is comprised of members "selected at the discretion of the Chief of Police" and "shall have some expertise in the field that is being reviewed."[9] Its role is "to ensure that

---

[9] Docket 474-5.

*Henry v. Municipality of Anchorage, et al.*                                                Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay      Page 4
Case 3:15-cv-00187-RRB    Document 711    Filed 03/05/18    Page 4 of 15

the investigation was conducted in a complete and accurate manner."[10] Under that policy, the Board is tasked with reviewing "cases assigned to it by the Chief of Police" and is permitted to act only "when assigned by the Chief of Police."[11] It is clear that, under the APD Policies, the Chief of Police is the primary decision-maker when it comes to the discipline of police personnel.

**Anchorage Municipal Code**

"A dismissal, demotion with reduction in pay or suspension without pay of an employee, who is not an executive unless serving a probationary period for any reason, shall be accomplished and reviewed only in accordance with the procedures stated in this section."[12] The AMC requires that "before an agency head may dismiss, demote with a reduction in pay or suspend without pay an employee, the employee shall receive written notice of intent to discipline containing a reasonably specific statement of the basis for the intended discipline, an explanation of the employee's entitlement to ask for a hearing at which such intended discipline may be reviewed and the name of the hearing officer who will be used at the hearing if a hearing is requested."[13] "The employee may request either a pre-disciplinary hearing or a post-disciplinary arbitration,"[14] but the AMC clearly states that "under

---

[10] *See* Docket 681 at 2, *citing* APD Policies §§ 2.04.010, 2.04.015.
[11] *Id.*
[12] AMC 3.30.103.
[13] *Id.* at A.
[14] *Id.* at B.

*Henry v. Municipality of Anchorage, et al.* Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay Page 5
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 5 of 15

no circumstances shall [an] employee be entitled to request and participate in both a pre-disciplinary hearing and a post-disciplinary arbitration concerning a particular disciplinary action."[15]

If an employee requests a pre-disciplinary hearing, the employee may appeal the hearing officer's pre-disciplinary decision to the state superior court.[16] If the employee waives a pre-disciplinary hearing, as Plaintiff did here, and selects post-disciplinary arbitration, the decision of the arbitrator shall be final and binding on all parties and shall only be subject to appeal in the superior court in accordance with Alaska Stat. §§ 9.43.120–150. In the instant case, after waiving the pre-disciplinary hearing, Plaintiff filed a grievance on May 6, 2015, pursuant to AMC 3.30.101.[17] The grievance was denied by Employee Relations Director Usera on May 19, and denied by Mayor Sullivan on May 29, 2015.[18] Plaintiff then failed to pursue binding arbitration, as he was entitled to do, and instead filed this lawsuit.[19]

**Choice of Disciplinary Policy**

There appears to be some ambiguity in the Municipality's overall structure with respect to discipline across agencies. While the AMC contains disciplinary procedures, the AMC also allows for individual agencies to draft its own

---

[15] *Id.* at L.
[16] *Id.* at M.
[17] Docket 506-4 at 53 (Exhibit 31).
[18] Docket 505-1 at 93–97 (Exhibits 76 and 77).
[19] Docket 506-4 at 81 (Exhibit 34).

*Henry v. Municipality of Anchorage, et al.* Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay   Page 6
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 6 of 15

disciplinary procedures, such as the APD has done here.  The parties have not cited, and the Court cannot find, where the AMC clearly dictates what should be done in a situation such as this, where an investigation by the Municipal Manager involves APD employees.

The Municipality argues that APD's internal discipline policies may be lawfully applied only to *represented* employees who are governed by the APDEA collective bargaining agreement, and cannot lawfully be applied to non-represented employees such as Plaintiff.[20]  While this may have been what the parties believed at the time, the Court has yet to find any clear authority on this point.  However, the Court notes that even if the APD procedures could be applied, this does not mean that the APD procedures were exclusive, or the only policy pursuant to which Plaintiff could be disciplined.

Alternatively, the Municipality argues that APD Policies sections 2.04.010 and 2.04.015 apply only to remedial action taken directly by APD, and that in this case the investigation was requested by the Municipal Attorney and was not internal to APD.[21]  It is noteworthy that the APD Policies expressly provide that "the Administrative Review Board does not replace or modify any grievance process afforded an employee,"[22] and further provide that "[i]n cases where an act

---

[20] *See* AMC §§ 3.30.012, 3.70.170.
[21] Docket 691 at 3.
[22] APD Policies § 2.04.015(IV)(A).

*Henry v. Municipality of Anchorage, et al.*  Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay    Page 7
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 7 of 15

conflicts with Federal, State, or Municipal law, or conflicts with existing contract, the law or contract provision(s) shall prevail."[23] This suggests, at a minimum, that the APD Policies were not intended to be exclusive or to pre-empt other available procedures.

The Municipality further notes that the discipline was imposed by Nancy Usera of Anchorage's Employee Relations, in consultation with Municipal Manager George Vakalis. Both Ms. Usera and Mr. Vakalis were external to APD.[24] While Ms. Usera admitted at her deposition that she was unaware that APD had its own disciplinary procedure that was distinct from the Municipality procedure,[25] this is only relevant if the Municipality would have been *required* to proceed pursuant to the APD Policies, as opposed to the Municipal policies, which the Court now concludes it was not.

When the Municipality initially elected to proceed pursuant to the AMC, Plaintiff, a management level employee with 23 years of experience, did not object. In fact, Plaintiff explicitly indicated agreement as to the procedure that governed him when his counsel acknowledged that Plaintiff was subject to Municipality's personnel rules in a letter dated May 6, 2015.[26] While this is not

---

[23] *Id.* at § 2.04.015(IV)(B).
[24] Docket 691 at 3.
[25] Docket 474-9.
[26] Docket 506-4 at 54 (Exhibit 31).

*Henry v. Municipality of Anchorage, et al.*     Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay     Page 8
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 8 of 15

binding, it does go to the reasonableness of the Municipality's actions. The Court has seen nothing to indicate that the procedure employed by the Municipality was inappropriate, for it allowed the termination decision to be made by those who were not police officers and who apparently had not been in conflict with Plaintiff over the years. The decision-makers under the APD Policies likely would have been those who were described at oral argument, and in interrogatory answers, as Plaintiff's chief nemeses whom Plaintiff felt were biased against him.[27] The Court has not seen any evidence that Nancy Usera or George Vakalis, who ultimately made the termination decision, fit into this category. In any event, there is nothing to suggest that the APD procedure would have been more favorable to Plaintiff. Just the opposite is likely true. And there is nothing to suggest that the Municipality at any time abrogated its rights to discipline non-represented employees, or to follow its own disciplinary procedures when deemed appropriate.

The Court concludes, in light of the foregoing, that even if APD disciplinary policies could be applied to Plaintiff, it was not unreasonable for the Municipality to apply the disciplinary procedures pursuant to the AMC in this instance, rather than the procedures from the APD Policies.

---

[27] Plaintiff asserts in response to Interrogatory No. 21 that he was "subjected to ridicule by commanders among department co-workers." Docket 501-2 at 3.

*Henry v. Municipality of Anchorage, et al.*                                           Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay     Page 9
Case 3:15-cv-00187-RRB    Document 711    Filed 03/05/18    Page 9 of 15
*Henry v. Municipality of Anchorage, et al.*  Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay    Page 9
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 9 of 15

**Adequacy of Disciplinary Policy**

The Court now turns to Plaintiff's argument that the process to which he was subjected was inadequate. Due process requires that an employee "must receive oral or written notice of the proposed discharge, an explanation of the employer's evidence and an opportunity to present his position," prior to the termination of his employment.[28]

It is clear that Plaintiff was provided notice of the proposed discharge and an explanation of the evidence against him. The parties do not dispute that Plaintiff met with Nancy Usera and Chief Mew on March 25, 2015.[29] A transcript of that meeting indicates that not only were Plaintiff's options explained to him, but the options to resign or retire were also made available.[30] Plaintiff clarified his understanding of the evidence against him, said that he would not resign, and indicated that he would be speaking with his attorney.[31] Plaintiff was presented with a choice between a pre-disciplinary hearing and post-disciplinary arbitration, and he was given a week to consult with his attorney and make his decision. He opted to waive a pre-disciplinary hearing in favor of post-disciplinary arbitration.[32] Plaintiff's complaint now is that, by being forced to choose between pre- and post-

---

[28] *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1149 (Alaska 1986).
[29] Docket 506-5 (Exhibit 74).
[30] Docket 161-4.
[31] *Id.*
[32] Docket 506-5 (Exhibit 74).

*Henry v. Municipality of Anchorage, et al.*      Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay      Page 10
Case 3:15-cv-00187-RRB    Document 711    Filed 03/05/18    Page 10 of 15

disciplinary procedures, he was not given an adequate "opportunity to present his position" prior to his termination. He argues that the availability of a pre-termination hearing may not be made contingent upon forfeiting post-termination remedies. The Court has not found any legal authority for this proposition. More specifically, the Court has not found any express right to post-termination remedies from an employer who has otherwise afforded an employee all his due process rights.

The Alaska Supreme Court discussed the issue of due process in the context of internal termination hearings in *Brandner v. Providence Health and Services*, concluding that a physician's due process rights were violated by the procedures the hospital employed when "he was not given any opportunity to be heard prior to the termination of his hospital privileges."[33] In *Bradner*, the physician was not given the option of a pre-termination hearing. He was *only* provided with an opportunity for post-termination remedies. In contrast, Plaintiff was offered a pre-termination hearing which, consistent with municipal ordinance, was contingent upon waiving post-termination arbitration.[34] Moreover, he was entitled to appeal an adverse ruling from a pre-termination hearing to the state superior court pursuant to AMC 3.30.103(M). The Municipality argues that under Alaska law, "if Henry had

---

[33] *Brandner v. Providence Health & Servs., Washington,* 394. P.3d 581, 584 (2017).
[34] Plaintiff was offered a pre-termination hearing, as required by *Loudermill*. In the alternative, Plaintiff was offered post-termination arbitration that the Municipality was not otherwise obligated to provide.

*Henry v. Municipality of Anchorage, et al.* Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay      Page 11
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 11 of 15

elected a pre-termination hearing, or if he had elected neither a pre-termination hearing nor post-termination arbitration, he would [also] have been entitled to sue the Municipality on his employment claims for breach of contract as well as on his independent statutory claims."[35]

Plaintiff, relying on *Storrs v. Municipality of Anchorage*,[36] disagrees that he would have been entitled to pursue his claims in court. But Plaintiff's reading of *Storrs* is strained, at best, for *Storrs* does not restrict Plaintiff, or anyone similarly situated, from seeking legal redress once terminated from employment. The *Storrs* court, relying upon *Casey v. City of Fairbanks*,[37] specifically found that Storrs' post-termination remedy lies in the courts when no other post termination remedies are available. The *Storrs* court, however, was focused on a different issue, and addressed the question of whether a collective bargaining agreement could waive the constitutional right to a pre-termination hearing, and substitute a post-termination hearing instead. This, of course, does not apply here, for Plaintiff was not covered by a collective bargaining agreement and, in any event, was afforded the opportunity for a pre-termination hearing.

---

[35] Docket 578 at 5.
[36] Docket 631 at 20, citing *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1150 (Alaska 1986).
[37] 670 P.2d 1133 (Alaska 1983).

*Henry v. Municipality of Anchorage, et al.*      Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay      Page 12
Case 3:15-cv-00187-RRB    Document 711    Filed 03/05/18    Page 12 of 15

Significantly, the Alaska Supreme Court in *Storrs* found that the Municipality's pre-termination procedure "comported with minimal federal due process rights" in circumstances that were far less generous than provided to Plaintiff here. In *Storrs,* the Municipality conducted an investigation after receiving a complaint against Storrs, informed Storrs of the investigation, confronted Storrs with the accusations against him, interviewed him twice, and then terminated him without offering him any additional opportunities to respond. Unlike Plaintiff here, in *Storrs* there was no offer of a pre-termination hearing, no opportunity to consider his options, and no opportunity to consult with counsel. Nevertheless, the Alaska Supreme Court found that Storrs had received notice, an explanation of the evidence against him, and sufficient opportunity to respond during the course of the investigation, and therefore concluded that federal due process rights were satisfied.

Here, Rick Brown interviewed Plaintiff twice during his investigation, on October 20, 2014, and December 18, 2014.[38] Plaintiff was provided with pre-interview admonitions in both instances, which advised him that he was being questioned "as part of an official investigation."[39] Plaintiff also provided Rick Brown with his own memorandum, dated November 15, 2014.[40] On March 25,

---

[38] Docket 506-3 at 22, 85. Rick Brown summarized these interviews in his report. *See* Docket Nos. 115-4; 115-5; 115-6.
[39] Docket 506-5.
[40] Docket 115-6 at 4.

*Henry v. Municipality of Anchorage, et al.*                                                      Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay      Page 13
Case 3:15-cv-00187-RRB    Document 711    Filed 03/05/18    Page 13 of 15

2015, he was given a copy of the investigative report, attachments, and an unsigned Disciplinary Action Report describing the basis for termination. In addition to all of this, as mentioned above, Plaintiff was offered a pre-termination hearing and allowed a week to consider his options and to consult with counsel. Thereafter, Plaintiff waived his right to a pre-termination hearing. Just as the Alaska Supreme Court concluded in *Storrs*, this Court concludes that the pre-termination procedure followed by the Municipality in the instant case was appropriate under the circumstances, and comported with minimum due process rights.

## CONCLUSION

Although, with the benefit of hindsight, Plaintiff asserts that his due process rights were violated for failure to follow the APD disciplinary policy, the Court finds it relevant that: (1) Plaintiff was aware of the APD disciplinary policy, yet still acquiesced to the Municipality procedures; (2) Plaintiff had the benefit of counsel when determining whether or not to choose a pre-disciplinary hearing; (3) Plaintiff does not argue that the APD disciplinary policy would have yielded a more favorable result, and there is no reason to believe that it would have; and (4) the Municipality procedures, although different from the APD procedures, still afforded Plaintiff all of his procedural due process rights.

Therefore, the Court's Order at Docket 672 is VACATED. The Court, upon reconsideration, GRANTS Defendant's Motion for Summary Judgment at

*Henry v. Municipality of Anchorage, et al.*     Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay     Page 14
Case 3:15-cv-00187-RRB   Document 711   Filed 03/05/18   Page 14 of 15

Docket 503, and DENIES Plaintiff's Motion for Summary Judgment at Docket 472. Plaintiff was afforded adequate due process as is required under the Fourteenth Amendment to the U.S. Constitution and *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

The Court's records reflect that few claims remain in this case, including Count II for wrongful termination, portions of Count VI for retaliation, and Count VII for violations of Title VII. The parties shall provide the Court with a status report on or before March 15, 2018, given the Court's recent rulings, as to the progress of discovery and when they expect to be ready for trial.

The stay previously entered herein is now lifted.

IT IS SO ORDERED this 5th day of March, 2018, at Anchorage, Alaska.

                                                */s/ Ralph R. Beistline*
                                                RALPH R. BEISTLINE
                                                Senior United States District Judge

*Henry v. Municipality of Anchorage, et al.*     Case No. 3:15-cv-00187-RRB
Order Vacating Docket 672, Granting Summary Judgment re Count IX, and Lifting Stay     Page 15
Case 3:15-cv-00187-RRB    Document 711    Filed 03/05/18    Page 15 of 15